In re ADVANCEPCS HEALTH L.P., Ad-
vancePCS a/k/a AdvancePCS, Inc.,
PCS Health Systems, Inc., and Advan-
cePCS Health Systems, L.L.C.

No. 04–0182.

Supreme Court of Texas.

April 15, 2005.

Chris A. Brisack, Norquest & Brisack, L.L.P., McAllen, Lecia Lynne Chaney,

Rodriquez, Colvin Chaney & Saenz, LLP, Brownsville, Lisa D. Duran, Quarles & Brady Streich, Lang, LLP, Phoenix, AZ, for relator.

David T. Bright, Watts Law Firm, L.L.P., Corpus Christi, Jaime A. Gonzalez, Gonzalez & Associates, James P. Roy, Domengeaux, Wright, Roy & Edwards, Lafayette, LA, Donald Kelly, Kelly, Townsend & Thomas, Henry Cole Gallagan Jr., Natchitoches, LA, Spencer Hoise, Hoise, Frost, Large & McArthur, San Francisco, CA, William Large, Hoise, Frost, Large & McArthur, Anchorage, AK, William Hoese, Kohn, Swift & Graf, Philadelphia, PA, Mikal C. Watts, Watts Law Firm, L.L.P., Corpus Christi, for real party.

PER CURIAM.

We are once again called upon to decide the enforceability of an arbitration provision, this time in transactions between a pharmacy benefits management company and member pharmacies. The trial court denied the management company's motion to compel arbitration under the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§ 1–16. The court of appeals summarily denied mandamus relief. Because the parties' contracts clearly require arbitration, we once again grant conditional mandamus relief.

AdvancePCS Health L.P. (PCS)[1] processes and adjudicates claims for reimbursement between member pharmacies and customers' health care plans. In this case, the owners of several pharmacies[2] filed suit in Hidalgo County on behalf of themselves and a putative class, asserting PCS had underpaid them for a decade.

■ PCS moved for arbitration under the FAA. A party attempting to compel arbitration must establish a valid arbitration agreement whose scope includes the claims asserted. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (per curiam). As it is undisputed that the clause asserted here is broad enough to cover the pharmacies' claims, the question presented is its validity.

■ PCS submitted affidavits establishing that pharmacies joining its PCS network receive an enrollment package containing a Provider Agreement, enrollment instructions, an enrollment form, a service level worksheet, various network enrollment forms and addenda, and a provider manual. The Provider Agreement contains the following arbitration clause:

> 9.5 *Arbitration:* Any and all controversies in connection with or arising out of this Agreement will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association. The arbitrator must follow the rule of law, and may only award remedies provided in this Agreement. The award of the arbitrator will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Arbitration under this provision will be conducted in Scottsdale, Arizona, and Provider here-

1. The defendant assumed various corporate identities during the ten-year period for which plaintiffs brought suit—including relators AdvancePCS Health L.P., AdvancePCS a/k/a AdvancePCS, Inc., PCS Health Systems, Inc., and AdvancePCS Health Systems, L.L.C. (all referred to herein as "PCS"). The relationship among these entities is immaterial here, as the Provider Agreement at issue remained substantially the same throughout.

2. Named plaintiffs were Hector de la Rosa and de la Rosa Pharmacy, Inc., John Z. Cavazos and J.Z.C. Corporation, and Causey's Pharmacy, Inc. (collectively, the "pharmacies").

by agrees to such jurisdiction, unless otherwise agreed to by the parties in writing or mandated by Law, and the expenses of the arbitration, including attorneys' fees, will be paid for by the party against whom the award of the arbitrator is rendered. This Section 9.5 and the parties' rights hereunder shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

 Under the FAA, an agreement to arbitrate is valid if it meets the requirements of the general contract law of the applicable state. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Here, the Provider Agreement contains a choice-of-law provision stating the agreement would be "construed, governed and enforced" according to Arizona law.[3] But no party asked the trial court to take judicial notice of Arizona law.[4] *See* TEX.R. EVID. 202. Indeed, all parties agree that Texas and Arizona law do not differ on any point material here. As there appears to be no conflict of laws, "there can be no harm in applying Texas law." *Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657, 672 (Tex. 2004); *see In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 550 (Tex.2002) (per curiam).

 Of the enrollment documents here, only the Provider Agreement contained an arbitration clause, and only the membership and network enrollment forms were signed by the pharmacies.

But neither the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties. *See* 9 U.S.C. § 3; TEX. CIV. PRAC. & REM.CODE § 171.001(a); *see also In re Halliburton Co.,* 80 S.W.3d 566, 569 (Tex.2002) (holding arbitration clause was accepted by continued employment).[5]

 Nor does an arbitration agreement have to be included in each of the contract documents it purports to cover. *See, e.g., Halliburton,* 80 S.W.3d at 569 (enforcing stand-alone dispute resolution program); *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 752–53, 755 (Tex.2001) (applying arbitration clause in loan agreement to entire mobile-home transaction); *In re Am. Homestar of Lancaster, Inc.,* 50 S.W.3d 480, 482 (Tex.2001) (enforcing arbitration provision that was separate from retail installment contract). The pharmacies signed numerous enrollment forms over the years (as new providers were added to the PCS network), each of which explicitly referenced and agreed to the terms of the Provider Agreement. So long as the parties agreed to arbitrate this dispute, it does not matter which document included that agreement. *Cf. DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 102 (Tex.1999) (requiring contracts pertaining to same transaction to be construed together).

Finally, the pharmacies' suit alleges that PCS miscalculated the negotiated discount

---

3. Because the arbitration clause specifically provided for application of the FAA, this specific provision controls over the more general choice-of-law clause to the extent of any conflict. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133–34 (Tex.1994).

4. The pharmacies' brief on appeal contains a number of helpful references to Arizona cases, but throughout asserts that Arizona and Texas law are the same.

5. The Texas Arbitration Act requires signatures in two circumstances, neither of which applies here. *See* TEX. CIV. PRAC. & REM.CODE § 171.002 (making Act inapplicable to contracts of less than $50,000 or personal injury claims, unless signed by parties and their attorneys). Moreover, the FAA preempts state contractual requirements that apply only to arbitration clauses. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

from the Average Wholesale Price figure (AWP), a term defined in the record only in the Provider Agreement. Indeed, all of the details of the parties' reimbursement arrangements are contained in that Agreement. As the pharmacies' suit is based on that Agreement, they cannot enforce all of it except the arbitration clause. *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *FirstMerit*, 52 S.W.3d at 756.

Once PCS established the existence of an arbitration clause governing this dispute, the burden shifted to the pharmacies to raise an affirmative defense to arbitration. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003); *Oakwood*, 987 S.W.2d at 573. They assert three.

 First, the pharmacies assert other provisions in the Provider Agreement allow PCS to cancel the arbitration agreement at will, thus rendering its promise illusory and the agreement without consideration. *See J.M. Davidson*, 128 S.W.3d at 228. In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract. *See, e.g., id.; Halliburton*, 80 S.W.3d at 569. But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration. *See FirstMerit Bank*, 52 S.W.3d at 757. Having used PCS's services and network to obtain reimbursements for 10 years, the pharmacies cannot claim their agreement to arbitrate was without consideration.

 Moreover, the arbitration clause here is not illusory even if considered alone. The pharmacies' point to the following provisions as rendering the contract illusory:

- 1.3 *Amendments.* From time to time AdvancePCS may amend this Agree-

ment ... by giving notice to Provider of the terms of the amendment and specifying the date the amendment becomes effective, which shall not be less than thirty (30) days after the notice.
- 8.3 *Immediate Termination Rights.* If ... Provider fails to perform or breaches any term or provisions of the AdvancePCS Documents, AdvancePCS may terminate this Agreement effective upon notice to Provider. This termination right is in addition to any and all other rights and remedies that may be available to AdvancePCS under this Agreement or at law or equity.
- 8.5 *Provider Event of Default and AdvancePCS Remedy and Other AdvancePCS Rights....* Nothing in this Agreement shall limit, and the parties agree that in addition to the rights specified in this Section, AdvancePCS shall retain, any and all rights AdvancePCS may have at law, equity or under this Agreement.

But the first of these provides a 30–day window during which the arbitration clause cannot be cancelled. *See Halliburton Co.*, 80 S.W.3d at 569–70 (holding arbitration clause not illusory when it provided for 10–day window). The last is inapplicable, as the general reservation of "all rights [PCS] may have at law" cannot be construed to render the express arbitration clause meaningless. *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex.2004). And the second does not render the clause illusory because of another provision the pharmacies overlook:

- 8.6 *Survival of Certain Provisions.* Notwithstanding the termination of this Agreement, ... any obligations that arise prior to the termination of the Agreement shall survive such termination.

Had the pharmacies invoked arbitration rather than filing suit, PCS could not have

avoided arbitration by terminating the Provider Agreement.[6] Thus, the clause was not illusory.

■ Second, the pharmacies contend the arbitration clause is substantively unconscionable because it lacked mutuality, and procedurally unconscionable because the pharmacies were forced to accept it. We rejected the first claim above, and have previously rejected the second. *See Halliburton,* 80 S.W.3d at 572 (holding arbitration provision not unconscionable simply because employer made "take it or leave it" offer to at-will employees).

■ Adhesion contracts are not automatically unconscionable, and there is nothing per se unconscionable about arbitration agreements. *Oakwood,* 987 S.W.2d at 574. Under the FAA, unequal bargaining power does not establish grounds for defeating an agreement to arbitrate absent a well-supported claim that the clause resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90–91 (Tex.1996) (per curiam).[7]

■ Third, the pharmacies contend the arbitration clause was disclosed only after they had joined PCS. Hector de la Rosa testified that PCS sent the Provider Agreement to him only after he had signed and returned the enrollment forms. When asked whether he read the Provider Agreement upon receipt, he answered "[a]bsolutely not."

But de la Rosa signed several of the enrollment forms seriatim; having received the Provider Agreement after the first, he was on notice of its terms for all the rest. Nor did anyone else testify that the Provider Agreement came only after they had joined, including several other employees and agents who often signed for de la Rosa's pharmacies. As neither affidavits nor testimony show that any pharmacy joined the PCS network without an opportunity to read the Provider Agreement, the pharmacies have not carried their evidentiary burden. *See Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 269 (Tex.1992).[8]

■ Thus, the trial court abused its discretion in failing to compel arbitration. A party denied the right to arbitrate under the FAA is entitled to mandamus relief. *In re Wood,* 140 S.W.3d 367, 370 (Tex. 2004) (per curiam).

Accordingly, without hearing oral argument, we conditionally grant the writ of mandamus and order the trial court to compel arbitration of the pharmacies' claims in accordance with the arbitration

---

6. For reasons that are unclear, the pharmacies also say mutuality is destroyed by provisions in the Provider Agreement reserving the right to obtain injunctive relief for violations of intellectual property rights, and for resolving conflicts between a PCS manual and its "On–Line Info." We find neither applicable.

7. Whether the terms and conditions of this contract, taken as a whole, are unconscionable is a matter for the arbitrator. *See First-Merit,* 52 S.W.3d at 756; *Oakwood,* 987 S.W.2d at 573 n. 3.

8. Moreover, any pharmacy that continued to use the PCS network after an opportunity to read the Provider Agreement and object to its terms arguably accepted it. *See Halliburton,* 80 S.W.3d at 569 (holding employee accepted arbitration policy by continuing employment after receiving notice of it); *EZ Pawn,* 934 S.W.2d at 90 (noting party given opportunity to read arbitration agreement is presumed to know its contents).

clause. TEX.R.APP. P. 52.8. The writ will issue only if the trial court fails to do so.

Justice JOHNSON did not participate in the decision.