IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0490
════════════
 
In re Palm Harbor Homes, 
Inc., and Palm Harbor Homes I, L.P. d/b/a Palm Harbor Village, 
Relator
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
Argued March 23, 
2005
 
 
Justice Johnson delivered the opinion 
of the Court, in which Chief Justice 
Jefferson, Justice Hecht, Justice Wainwright, Justice Brister, Justice Medina, 
Justice Green, and Justice 
Willett joined.
 
Justice O’Neill filed a 
concurrence.
 
This original 
proceeding presents the issue of whether the purchasers of a manufactured home 
must arbitrate their claims against both the retailer and manufacturer of the 
home pursuant to a written arbitration agreement between the purchasers and the 
retailer. The agreement specified that it inured to the benefit of the 
manufacturer and gave the manufacturer a twenty-day period during which it could 
opt out of arbitration. We conclude that the manufacturer’s opt-out right did 
not render the arbitration agreement unenforceable and that the purchasers must 
arbitrate their claims against both parties.
I. Background
Raymond and 
Crystal Ripple contracted with Palm Harbor Village (the retailer) to purchase a 
manufactured home which was to be, and subsequently was, manufactured by Palm 
Harbor Homes, Inc. During the process of contracting for and purchasing the 
home, the Ripples and the retailer entered into several separate agreements. Two 
of the agreements were arbitration agreements. The first was dated October 1, 
1998, and the second was dated December 17, 1998. The Ripples urge that the 
second agreement is applicable to the issues in this appeal. Relators do not 
contend otherwise. We will assume, without deciding, that the second agreement 
governs the issues presented and reference it as “the agreement.”[1]
The agreement 
provided that all disputes between the Ripples and the retailer arising out of 
or relating in any way to the sale, purchase, or occupancy of the home would be 
resolved through binding arbitration. The agreement is one page long; is labeled 
“ARBITRATION AGREEMENT” at the top of the page in large bold-face capital 
letters; sets out in the first paragraph that it inures to the benefit of the 
manufacturer as well as binds the purchasers and retailer; and provides that it 
does not constitute a waiver of any substantive rights or remedies available 
under applicable law, but is an election to resolve claims, disputes and 
controversies by arbitration rather than the judicial process. The 
next-to-the-last sentence provides, in all capital letters, that “THE PARTIES 
KNOWINGLY WAIVE ANY RIGHT TO A JURY TRIAL.” The agreement also provides that the 
manufacturer “in its sole discretion, may opt out of, and elect not to be bound 
by, the arbitration by giving written notice of the election to all parties 
within twenty (20) days after receipt of” notice that another party intended to 
arbitrate a dispute.
After the 
manufactured home was purchased by the Ripples, they began experiencing problems 
with it and lodged a series of complaints. They eventually sued both the 
retailer and the manufacturer, alleging breach of contract, breach of warranty, 
and statutory liability under the Residential Construction Liability Act.
The retailer 
and manufacturer moved to compel arbitration under the Federal Arbitration Act 
(FAA). See 9 U.S.C. §§ 1-16. The trial court denied the motion as to 
both. A divided court of appeals denied mandamus relief. 129 S.W.3d 636, 
646.
Both the 
retailer and manufacturer seek a writ of mandamus directing the trial court to 
order the Ripples to arbitrate. The Ripples do not dispute applicability of the 
FAA, but oppose arbitrating any claims because (1) relators have not carried 
their burden to establish a valid agreement to arbitrate; (2) the signed 
arbitration agreement lacks consideration; (3) the agreement is substantively 
and procedurally unconscionable; and (4) the manufacturer was not a signatory to 
the agreement and has not shown itself to be a third-party beneficiary entitled 
to enforce the agreement.
II. Agreement to Arbitrate
The Ripples 
contend that the retailer and manufacturer have not met their burden to 
establish an agreement to arbitrate because they have not presented complete 
records of the three hearings held by the trial court en route to its final 
order denying arbitration. They assert that absent such records, the trial 
court’s ruling cannot be determined to have been an abuse of discretion. They do 
not contend, however, that any evidence contesting validity of the agreement was 
introduced at any of the three hearings.
Relators’ 
original answer to the Ripples’ suit included a plea in abatement seeking 
dismissal or abatement of the suit based on the arbitration agreement. The 
arbitration agreement, along with other documents signed by the Ripples, was 
attached to the pleading. The Ripples do not claim to have at any point disputed 
that they signed the arbitration agreement as part of the process by which they 
purchased their manufactured home. Their position as to the arbitration 
agreement is encapsulated by their response to relators’ second motion for 
reconsideration of the motion to compel arbitration and their affidavits 
attached to that response: (1) in the course of contracting for the purchase of 
the home they signed several documents, including two documents “purporting” to 
be arbitration agreements; (2) the documents were not explained to them; (3) 
they were told that the documents were necessary to complete the purchase; (4) 
they were unaware that they had signed arbitration agreements; (5) they never 
were in contact with the manufacturer during the purchase process; (6) the 
manufacturer did not sign the arbitration agreements; and (7) they were unaware 
of what arbitration entailed and did not voluntarily waive their right to a jury 
trial.
The Ripples 
have not asserted that there was fraud, deceit, or misrepresentation involved in 
their signing of the agreement. Accordingly, they are bound by the agreement. 
See In re McKinney, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam) (holding 
that absent fraud, misrepresentation, or deceit, parties are bound by the terms 
of the contract signed, regardless of whether they read it).
Given the 
Ripples’ concession at oral argument that records of the hearings in the trial 
court would not show that evidence was introduced, and their consistent position 
taken before the trial court as reflected by the record which is before us, the 
failure of relators to present transcripts of the hearings does not create a 
presumption that matters occurring during the hearings would support an implied 
finding that an arbitration agreement did not exist. See Michiana Easy Livin’ 
Country, Inc. v. Holten, 168 S.W.3d 777, 781-84 (Tex. 2005) (rejecting a 
claim that we must presume evidence that supported the trial court’s order was 
presented at a pretrial hearing when there was no indication evidence was 
presented at that hearing). Because the relators presented a signed arbitration 
agreement to the court along with other documents the Ripples signed, and the 
Ripples have presented no evidence that they did not sign the agreement, we 
conclude that, as a matter of law, the existence of an arbitration agreement 
among the parties was established.
III. Consideration
Next, the 
Ripples claim the arbitration provision lacks consideration. In determining 
validity of agreements to arbitrate which are subject to the FAA, we generally 
apply state-law principles governing the formation of contracts. See First 
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Arbitration 
agreements, like other contracts, must be supported by consideration. See In 
re AdvancePCS Health L.P., 172 S.W.3d 603, 607 (Tex. 2005) (per curiam); 
In re Halliburton Co., 80 S.W.3d 566, 569-70 (Tex. 2002). Such 
consideration may take the form of bilateral promises to arbitrate. See In re 
AdvancePCS, 172 S.W.3d at 607. Further, when an arbitration clause is part 
of a larger, underlying contract, the remainder of the contract may suffice as 
consideration for the arbitration clause. Id.; see also In re 
FirstMerit Bank, N.A., 52 S.W.3d 749, 757 (Tex. 2001).
A. The Retailer
The 
arbitration agreement was part of a larger contractual relationship between the 
Ripples and the retailer. The underlying contract between the Ripples and the 
retailer constituted valid consideration for the arbitration agreement as 
between them, as did their mutual promises to arbitrate disputes involving the 
manufactured home or its sale. See In re AdvancePCS, 172 S.W.3d at 607 
(holding there was a valid arbitration agreement, as the underlying contract 
provided adequate consideration). The agreement’s provision extending to the 
manufacturer a right to opt out of arbitration, even if it were illusory because 
it did not bind the manufacturer to arbitrate, did not make either the 
consideration of the underlying contract or the promises to arbitrate any 
disagreements between themselves illusory as between the retailer and the 
Ripples. Cf. Light v. Centel Cellular Co., 883 S.W.2d 642, 645 (Tex. 
1994) (noting that a promise is illusory if it fails to bind the promisor).
B. The Manufacturer
A third-party 
beneficiary may enforce a contract to which it is not a party if the parties to 
the contract intended to secure a benefit to that third party and entered into 
the contract directly for the third party’s benefit. See Stine v. 
Stewart, 80 S.W.3d 586, 589 (Tex. 2002); see also MCI Telecomms. Corp. v. 
Tex. Utils. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999). As previously noted, 
the arbitration agreement provided that it “inure[d] to the benefit of the 
manufacturer of the Home.” By its own terms, the agreement was entered into, in 
part, directly for the manufacturer’s benefit. Because the manufacturer is a 
third-party beneficiary of the underlying contract and not a first party to it, 
our analysis as to the Ripples’ obligation to arbitrate with the manufacturer is 
different from our analysis as to the retailer.
As a 
third-party beneficiary, the manufacturer was not a promisor and therefore was 
not required to give consideration for the agreement which created its 
third-party beneficiary status. See Stine, 80 S.W.3d at 589. For purposes 
of determining whether the arbitration agreement was supported by consideration 
under such circumstances, it is not relevant that the agreement did not bind the 
manufacturer to arbitrate, for as we have concluded, the agreement was supported 
by consideration in the form of both the underlying contract and promises of the 
retailer. It follows that the Ripples’ obligation to arbitrate with the 
manufacturer did not fail for lack of consideration. See id.
We have 
recognized that an arbitration agreement may be illusory if a party can 
unilaterally avoid the agreement to arbitrate. See J.M. Davidson, Inc. v. 
Webster, 128 S.W.3d 223, 230 & n.2 (Tex. 2003). In Davidson, we 
remanded a case for the trial court to determine whether an ambiguous contract 
allowed an employer to modify or terminate an arbitration agreement at any time. 
Id. at 230-31. We noted that most courts which have considered the issue 
have held that if one party retains a unilateral, unrestricted right to 
terminate an arbitration agreement, the agreement is illusory. Id. at 230 
& n.2. Unlike the facts before us in this matter, however, Davidson 
addressed illusoriness in regard to promises between direct parties to an 
agreement. In this matter the manufacturer was a third-party beneficiary, not a 
direct party promisor.
We hold that 
the agreement was not illusory as to the manufacturer.
IV. Unconscionability
The Ripples 
also challenge the agreement as being both substantively and procedurally 
unconscionable. Substantive unconscionablity refers to the fairness of the 
arbitration provision itself, whereas procedural unconscionability refers to the 
circumstances surrounding adoption of the arbitration provision. In re 
Halliburton, 80 S.W.3d at 571. Such issues are properly considered by courts 
in determining the validity of an arbitration provision. Id. at 572.
A. Substantive Unconscionability
The Ripples 
claim the arbitration agreement is substantively unconscionable because it binds 
them to arbitrate with the manufacturer but does not bind the manufacturer to 
arbitrate with them. The test for substantive unconscionability is whether, 
“given the parties’ general commercial background and the commercial needs of 
the particular trade or case, the clause involved is so one‑sided that it is 
unconscionable under the circumstances existing when the parties made the 
contract.” In re FirstMerit Bank, 52 S.W.3d at 757.
Even though 
the Ripples have asserted claims in addition to breach of contract, their 
agreement to purchase the home and their use of the home underlie all their 
claims. We have recently held that under certain circumstances a party to an 
arbitration agreement may be compelled to arbitrate claims with a nonparty if 
the controversy arises from a contract containing an arbitration clause. In 
re Vesta Ins. Group, Inc., ___ S.W.3d ___, ___ (Tex. 2006) (per curiam); 
see Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527-28 (5th 
Cir. 2000) (stating that equitable estoppel allows a nonsignatory to compel 
arbitration when a signatory must rely on the contract with the arbitration 
provision in asserting its claims or when the claims against the nonsignatory 
are interwoven with the claims against a signatory); see also In re Weekley 
Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005) (holding that equitable 
estoppel doctrine may in some instances require a nonparty to an arbitration 
agreement to arbitrate with a party); In re Kellogg Brown & Root, 
Inc., 166 S.W.3d 732, 738-39 (Tex. 2005) (same). Also, the manufacturer had 
a limited period in which to refuse arbitration. Such a circumstance does not 
create a different relationship than provisions usually found in third-party 
beneficiary situations, because third-party beneficiaries generally have the 
right to disclaim benefits proffered by a contract. See Rau v. Modern Sales 
& Serv., Inc., 414 S.W.2d 203, 206 (Tex. Civ. App.–San Antonio 1967, 
writ ref’d n.r.e.); Restatement (Second) 
of Contracts § 306 (1981).
There is 
nothing inherently unconscionable about arbitration agreements, In re 
AdvancePCS, 172 S.W.3d at 608, and there is nothing unconscionable about 
contracting to benefit a third party. See Stine, 80 S.W.3d at 589-90. The 
Ripples have not met their burden to prove the agreement was so one-sided as to 
be unconscionable when its provisions effectively incorporate established 
principles of contract law. Considered in light of the remaining provisions of 
the agreement, the manufacturer’s limited right as a third-party beneficiary to 
refuse to arbitrate does not render the arbitration agreement so one-sided as to 
be substantively unconscionable.
The Ripples 
also contend that the agreement is substantively unconscionable because it is a 
contract of adhesion: they were required to execute the document in order to 
purchase the home. But, the fact that the Ripples would not have been able to 
buy the manufactured home unless they signed the arbitration agreement does not, 
in and of itself, make the agreement substantively unconscionable. See 
In re AdvancePCS, 172 S.W.3d at 608.
Furthermore, 
assuming arguendo that the agreement constituted a contract of adhesion, 
we have held that adhesion contracts are not per se unconscionable or 
void. Id. at 608; see also EZ Pawn Corp. v. Mancias, 934 S.W.2d 
87, 90-91 (Tex. 1996) (per curiam).
B. Procedural Unconscionability
Finally, the 
Ripples urge that the agreement is procedurally unconscionable. They point to 
their affidavits as establishing that they did not voluntarily waive their 
rights to a jury trial and that they are unsophisticated persons who, if the 
concept of arbitration had been explained to them, would not have signed the 
arbitration agreements. Such assertions, however, presuming the trial court 
found them to be true, fail to establish procedural unconscionability as to 
adoption of the arbitration agreement. See In re McKinney, 167 S.W.3d at 
835 (holding that absent fraud, misrepresentation, or deceit, parties are bound 
by terms of the contract they signed, regardless of whether they read it or 
thought it had different terms); EZ Pawn, 934 S.W.2d at 90 (holding that 
a party who has the opportunity to read an arbitration agreement and signs it is 
charged with knowing its contents); see also In re Halliburton, 80 S.W.3d 
at 568-69 (holding an arbitration clause was accepted by an employee despite 
employee’s claim that he did not understand it).
The 
principles of unconscionability do not negate a bargain because one party to the 
agreement may have been in a less advantageous bargaining position. 
Unconscionablity principles are applied to prevent unfair surprise or 
oppression. See In re FirstMerit Bank, 52 S.W.3d at 757. The agreement 
before us is clearly labeled as an agreement providing that disputes will be 
settled by arbitration. It is relatively short and specifically provides that it 
does not constitute a waiver of any substantive rights or remedies except as to 
the forum for resolving disputes, and it highlights the statement that a jury 
trial is being waived.
We find 
neither unfair surprise nor oppression in the agreement as a whole nor in the 
substance of the manufacturer’s opt-out provision. Accordingly, we disagree with 
the Ripples’ contention that the agreement was, as to either the retailer or the 
manufacturer, procedurally unconscionable.
V. Conclusion
We conclude 
that the trial court abused its discretion in failing to order the Ripples to 
arbitrate their claims against the retailer and manufacturer. We conditionally 
grant the writ of mandamus and direct the trial court to compel arbitration of 
the Ripples’ claims. The writ will issue only if the trial court fails to comply 
with our directive.
 
 
________________________________________
Phil 
Johnson
Justice
 
 
OPINION DELIVERED: June 9, 
2006




[1] The court of appeals construed the two arbitration 
agreements together in determining that the second agreement’s opt-out language 
applied. See 129 S.W.3d 636, 643. Whether we construe the agreements 
together as the court of appeals construed them, or consider the second 
agreement as the operative agreement as the Ripples urge, we must address the 
effect of the opt-out language which is only in the second 
agreement.