**AFFIRM and REMAND; and Opinion Filed November 18, 2013.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00446-CV

**IDEAL ROOFING, INC. AND IDEAL ROOFING, L.L.P., Appellants**

**V.**

**MIKE ARMBRUSTER AND NERY ARMBRUSTER, Appellees**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-11-03420-E**

## MEMORANDUM OPINION
Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Fillmore

In this interlocutory appeal, appellants Ideal Roofing, Inc. (Ideal Inc.) and Ideal Roofing, L.L.P. (Ideal L.L.P.) assert the trial court erred by denying their motion to compel arbitration of the claims of appellees Mike Armbruster and Nery Armbruster. We affirm the trial court's order denying appellees' motion to compel arbitration.

### Background

On June 25, 2003, Mike Armbruster entered into a Roof Contract with Ideal Inc. for installation of a roof on appellees' residence in Dallas, Texas. The Roof Contract contains the following arbitration provision:

Upon the request of any party, made before or after the institution of any legal proceeding, any dispute, claim, or controversy of any kind (whether in contract or in tort [sic] statutory or common law, legal or equitable) arising between the parties in any way out of pertaining to or in connection with this Agreement ("Dispute") shall be resolved by binding arbitration. Any arbitration hereunder shall be conducted in accordance with the terms of this Agreement and, to the extent not inconsistent, with the Commercial Arbitration Rules of the American Arbitration Association, and (to the maximum extent applicable) the Federal Arbitration Act. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. All statutes of limitations that would otherwise be applicable shall apply to any arbitration proceeding.

On September 1, 2004, an Asset Purchase Agreement was entered into by Ideal Inc. and Ideal L.L.P. which provided for the sale of Ideal Inc. assets to Ideal L.L.P.

According to appellees' pleadings, in "late 2009," appellees noticed the exterior of their residence was deteriorating. Inspections were subsequently performed on the roof of the residence, and it was "concluded" the roof was improperly installed resulting in water damage to the residence.

Appellees filed suit against Ideal Inc. and Ideal L.L.P. for damages they claim arise from the improperly installed roof. Ideal Inc. and Ideal L.L.P. filed a motion to compel arbitration of appellees' claims. The trial court denied the motion to compel arbitration. Ideal Inc. and Ideal L.L.P. filed this interlocutory appeal of the trial court's denial of their motion to compel arbitration.

## Waiver of the Arbitration Agreement

In a single issue, Ideal Inc. and Ideal L.L.P. assert that, because a valid arbitration agreement exists that is applicable to appellees' pleaded claims, the trial court erred in denying their motion to compel arbitration.[1]

---

[1] On appeal, appellants do not assert the trial court erred by failing to grant a stay of proceedings. This Court signed an order staying any trial setting in this case pending resolution of this interlocutory appeal.

The arbitration provision contained in the Roof Contract indicates any arbitration shall be conducted in accordance with the Federal Arbitration Act. *See In re Advance PCS Health, L.P.*, 172 S.W.3d 603, 605–06 & n.3 (Tex. 2005) (orig. proceeding) (per curiam) (FAA may govern a written arbitration clause enforced in Texas court if parties have expressly contracted for FAA's application); *In re ReadyOne Indus., Inc.*, 294 S.W.3d 764, 769 (Tex. App.—El Paso 2009, orig. proceeding) (if parties expressly choose for arbitration agreement to be governed by FAA, agreement should be enforced regardless of parties' nexus to interstate commerce). When a party asserts a right to arbitrate under the FAA, the question of whether the dispute is subject to arbitration is determined under federal law. *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995). As a matter of federal law, any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration, whether pertaining to the construction of the contract or a defense to arbitrability. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In general, a party seeking to compel arbitration under the FAA must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) (although there is strong presumption favoring arbitration, presumption arises only after party seeking to compel arbitration proves a valid arbitration agreement exists). The party seeking to avoid arbitration then bears the burden of raising an affirmative defense to enforcement of the otherwise valid arbitration provision. *In re AdvancePCS Health*, 172 S.W.3d at 607.

*Substantially Invoking the Judicial Process*

Appellees concede on appeal that "all parties are bound by the arbitration clause."[2] Because appellees do not contest appellants have established the existence of a valid and enforceable arbitration agreement, the burden shifted to appellees to prove a defense against enforcing the arbitration agreement. *See id.* In defense to appellants' motion to compel arbitration, appellees asserted before the trial court, as they do on appeal, that appellants waived their contractual arbitration rights by substantially invoking the judicial process to the detriment of appellees. As the parties claiming waiver, appellees had the heavy burden of establishing appellants substantially invoked the judicial process. *See See In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (orig. proceeding); *Adams v. StaxxRing, Inc.*, 344 S.W.3d 641, 648 (Tex. App.—Dallas 2011, pet. denied).

A party may waive contractual arbitration rights by substantially invoking the judicial process to the detriment of the other party. *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008). Waiver of contractual arbitration rights is a question of law that this Court reviews de novo. *Id.* at 598; *see also Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 644 (Tex. App.—Dallas 2010, no pet.). Because public policy favors resolving disputes through arbitration, the law imposes a strong presumption against the waiver of contractual arbitration rights. *See In re Bruce Terminix Co.*, 988 S.W.2d at 704; *see also In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding) (per curiam) (there is a strong presumption against waiver under the FAA). When presented with questions of waiver, we should resolve any doubts about wavier in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. The standard for determining waiver is the same under federal and state law. *See Holmes,*

---

[2] Because appellees concede there is a valid and enforceable arbitration agreement binding all parties, we need not address appellants' "sub-issues" of whether the arbitration agreement is valid and enforceable, whether appellee Nery Armbruster is bound by the arbitration agreement, and whether Ideal L.L.P. as successor-in-interest to Ideal Inc. may enforce the arbitration agreement.

*Woods & Diggs v. Gentry*, 333 S.W.3d 650, 654 (Tex. App.—Dallas 2009, no pet.). Waiver may be implied from a party's conduct, so long as that conduct is unequivocal. *Perry Homes*, 258 S.W.3d at 593. In "close cases, the 'strong presumption against waiver' should govern." *Id.* (quoting *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (orig. proceeding)).

In determining whether appellees met their burden, we must examine the case-specific facts and look to the totality of the circumstances. *See id.* at 591 (whether a party has waived arbitration must be decided on a case-by-case basis, based upon an examination of the totality of the circumstances). The judicial process is substantially invoked when the party seeking arbitration has taken specific and deliberate actions, after the filing of the suit, that are inconsistent with the right to arbitrate or has actively tried, but failed, to achieve a satisfactory result through litigation before turning to arbitration. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 763. Factors considered in determining whether a movant has substantially invoked the judicial process include when the movant knew of the arbitration clause, how much discovery has been initiated and who initiated it, the extent to which discovery related to the merits rather than arbitrability or standing, how much of the discovery would be useful in arbitration, whether the movant sought judgment on the merits, and whether the movant sought to compel arbitration on the "eve of trial." *Perry Homes*, 258 S.W.3d at 590–92.

The procedural history of the lawsuit may be summarized as follows:

- May 17, 2011 – Appellees filed their original petition asserting claims for breach of contract, breach of warranty, negligence, Deceptive Trade Practices Act violations, negligent hiring, and negligent supervision against Ideal Inc. and Ideal L.L.P. The petition included a Request for Disclosures.

- June 14, 2011 – Ideal L.L.P. answered the lawsuit. Ideal L.L.P. was represented by attorney William W. Rucker (Rucker).

- June 17, 2011 – Ideal Inc. answered the lawsuit. Ideal Inc. was represented by attorney B. Bruce Johnson (Johnson).

- June 17, 2011 – Ideal L.L.P. served its responses to appellees' request for disclosures.

- June 17, 2011 – Rucker forwarded correspondence to appellees' attorney indicating that Ideal L.L.P. is contractually committed to Ideal Inc. to make any necessary warranty repairs to appellees' roof. The correspondence includes the following:

  > We thought we had identified the warranty repair items when we last year sent Aspenmark Roofing Solutions to look at your clients' roof. . . . I noticed that you have retained two experts to inspect the roof. Assuming they have different opinions than Aspenmark, I would like to take their deposition or, better still, have them meet with one of our representatives at [appellees'] residence to review what they consider to be warranty repairs.

- September 2, 2011 – Ideal Inc. filed an amended answer in which it asserted an affirmative defense that Ideal L.L.P. is the only potential liable party based on the Asset Purchase Agreement between Ideal Inc. and Ideal L.L.P. Further, Ideal Inc. filed a counterclaim asserting entitlement to attorney's fees incurred in its defense.

- September 2, 2011 – Ideal Inc. served responses to appellees' request for disclosures.

- September 2, 2011 – Ideal Inc. served responses to Ideal L.L.P.'s request for disclosures.

- October 24, 2011 – Rucker forwarded correspondence to Johnson and appellees' attorney. The correspondence provides:

  > We have discovered that the [Roof Contract] between Ideal Roofing, Inc. and [appellees] contain [sic] provisions for binding arbitration. Although my client is not a party to the contract, Ideal Roofing, LLP would certainly join in an effort to arbitrate the dispute. . . . In the meantime, we have outstanding discovery (interrogatories and RFP's) to [appellees] that are due. Please advise if the responses are forthcoming.[3]

- October 27, 2011 – Appellees served their responses to Ideal Inc.'s and Ideal L.L.P.'s requests for disclosures.

- October 2011 – Appellees responded to Interrogatories served by Ideal L.L.P.

- October 27, 2011 – Appellees served their first requests for production on Ideal Inc. and Ideal L.L.P.

- November 8, 2011 – Ideal L.L.P. filed a motion for summary judgment asserting entitlement to judgment as a matter of law because appellees have no privity of contract with Ideal L.L.P. and Ideal L.L.P. did not install the allegedly defective roof.

---

[3] At the hearing of Ideal Inc.'s and Ideal L.L.P.'s motion to compel, the attorney for those parties advised the court that Ideal L.L.P. served a request for disclosure, request for production and interrogatories on appellees.

- November 14, 2011 – Appellees filed their first amended petition and requests for disclosures.

- November 23, 2011 – A notice of a January 13, 2012 hearing on Ideal L.L.P.'s motion for summary judgment was filed.

- November 23, 2011 – Ideal Inc. responded to appellees' first request for production. Ideal Inc. objected to producing a copy of the Asset Purchase Agreement between Ideal Inc. and Ideal L.L.P.

- November 28, 2011 – A letter agreement signed by appellees' attorney extended Ideal Inc.'s deadline for responding to appellees' request for production.

- December 8, 2011 – Ideal L.L.P. served its responses to appellees' request for production.

- December 16, 2011 – Johnson filed a motion to withdraw as counsel for Ideal Inc.

- December 20, 2011 – The trial court signed an order granting withdrawal of counsel for Ideal Inc.

- December 21, 2011 – Appellees filed their first motion to compel production from Ideal Inc.

- January 6, 2012 – Appellees filed their motion to strike Ideal Inc.'s answer because the court had granted Ideal Inc.'s attorney's motion to withdraw and the entity was not represented by an attorney.

- January 6, 2012 – A rule 11 agreement was filed with the court. Ideal L.L.P. agreed to pass the January 13, 2012 hearing on Ideal L.L.P.'s motion for summary judgment in order for appellees to pursue their motion to compel production against Ideal Inc.

- January 11, 2012 – Rucker, attorney for Ideal L.L.P., filed an appearance as attorney for Ideal Inc.

- January 12, 2012 – Appellees' filed a supplemental motion to compel production from Ideal Inc. and Ideal L.L.P. (Appellees joined Ideal L.L.P. in their motion to compel production from Ideal Inc. filed on December 21, 2011.)

- January 12, 2012 – Ideal L.L.P. filed its response to appellees' supplemental motion to compel production. Ideal L.L.P. stated in the response that it had produced the information requested in appellees' December 21, 2011 motion to compel production and January 12, 2012 supplemental motion to compel production.

- January 12, 2012 – Correspondence from Rucker to appellees' attorney states Ideal Inc. "is permitting him to produce a copy of the Asset Purchase Agreement." The correspondence provides he is substituting as attorney for Ideal Inc. and, "[a]ccordingly, I

propose that you get your roofing expert to meet with ours at [appellees] and let's see if we can agree on what needs to be done to fix any construction defects."

- January 13, 2012 – Notice of a February 10, 2012 hearing on Ideal L.L.P.'s motion for summary judgment is filed by Rucker.

- January 25, 2012 – Supplemental responses of Ideal Inc. and Ideal L.L.P. to appellees' supplemental motion to compel production are filed with the trial court, stating Ideal Inc. and Ideal L.L.P. have produced the requested information subject of appellees' motion to compel production and supplemental motion to compel production, and the January 27, 2012 hearing on those motions should be canceled.

- February 6, 2012 – Appellees filed their motion for continuance of a hearing of Ideal L.L.P.'s motion for summary judgment and their response to Ideal L.L.P.'s motion for summary judgment.

- February 6, 2012 – Appellees filed their second amended petition and request for disclosure. In their amended pleading, appellees asserted the Asset Purchase Agreement between Ideal Inc. and Ideal L.L.P. was a fraudulent transaction to avoid liability.

- February 8, 2012 – Notice was provided to appellees' attorney by Rucker that the February 10, 2012 hearing on Ideal L.L.P.'s motion for summary judgment had been canceled.

- March 10, 2012 – Rucker forwarded correspondence to appellees' attorney requesting an opportunity for a representative of "Ideal Roofing" to have access to appellees' roof.

- April 2, 2012 – Ideal L.L.P. filed its privilege log with the trial court.

- April 27, 2012 – Appellees filed their second motion to compel production from Ideal Inc. and Ideal L.L.P.

- May 8, 2012 – Correspondence from Rucker to appellees' attorney states that following the May 24, 2012 depositions of appellee Nery Armbruster and appellees' expert, David Gregg, "Ideal Roofing's" expert would inspect appellees' roof "for purposes of inspecting the condition of the roof and any damages to [appellees'] residence."[4]

- May 24, 2012 – Ideal Inc. and Ideal L.L.P. take the depositions of appellee Nery Armbruster and appellees' expert, David Gregg.

- May 29, 2012 – The trial court signed a mediation order.[5]

---

[4] It is not contested that the inspection of appellees' roof referenced in the correspondence was conducted.

[5] At the hearing of Ideal Inc.'s and Ideal L.L.P.'s motion to compel arbitration, Hill stated to the trial court that the parties had agreed to mediate the dispute.

- May 29, 2012 – The trial court notified the parties of a June 22, 2012 trial setting.

- June 4, 2012 – The trial court notified the parties of a November 5, 2012 trial setting.

- September 12, 2012 – Ideal Inc. and Ideal L.L.P. filed their unopposed motion to substitute J. Marcus Hill (Hill) as attorney for Ideal Inc. and Ideal L.L.P.[6]

- October 10, 2012 – Ideal Inc. and Ideal L.L.P. filed their unopposed motion to continue the November 5, 2012 trial setting.[7]

- October 10, 2012 – The trial court signed an order granting the substitution of Hill as attorney for Ideal Inc. and Ideal L.L.P.

- October 16, 2012 – The trial court notified the parties of an April 29, 2013 trial setting.

- November 9, 2012 – Correspondence from Hill to appellees' attorney states that if the case was not resolved at the November 15, 2012 "wrap-up" mediation,[8] Ideal Inc. and Ideal L.L.P. would like to file a proposed docket control order with the court and attached a proposed docket control order with deadlines in advance of the April 29, 2013 trial setting for appellees' attorney's consideration.

- November 13, 2012 – Correspondence to the mediator and appellees' attorney from Hill advised of the need to reschedule the November 15, 2012 mediation because trial of another matter conflicted with that date. Hill assured the mediator and appellees of "Defendant's" willingness "to work to resolve this matter" and requested dates of availability to re-schedule the second day of mediation.

- December 12, 2012 – A second day of mediation was conducted.

- December 20, 2012 – Correspondence from Hill to appellees' attorney states, "Pursuant to the [Roof Contract], any dispute arising out of the [Roof Contract] should be settled through arbitration procedures. Accordingly, attached please find a draft of Defendants' Application to Compel Arbitration & Stay Proceedings and Order." Ideal Inc. and Ideal L.L.P. requested appellees to advise if they agreed to or opposed the application to compel arbitration.

- January 2, 2013 – Ideal Inc. and Ideal L.L.P. filed their motion to compel arbitration and to stay proceedings.

---

[6] Hill was the registered agent for Ideal Inc. at the time the lawsuit was filed against Ideal Inc.

[7] In their motion for continuance, Ideal Inc. and Ideal L.L.P. state that "[o]n October 5, 2012, the parties agreed to attend mediation . . . in attempt to resolve this matter."

[8] At the hearing of Ideal Inc. and Ideal L.L.P.'s motion to compel arbitration and to stay proceedings, Hill advised the trial court that if a settlement was not reached on the first day of mediation, the mediator would schedule a second "wrap-up" mediation.

- March 15, 2013 – The trial court conducted a hearing on Ideal Inc. and Ideal L.L.P.'s motion to compel arbitration.

- March 26, 2013 – The trial court signed the order denying Ideal Inc. and Ideal L.L.P.'s motion to compel arbitration.

<u>Knowledge of the Arbitration Agreement and Delay</u>

The record indicates Ideal Inc. and Ideal L.L.P. were aware of the arbitration agreement at least within four months of answering the lawsuit, as reflected in the October 24, 2011 correspondence from Rucker to Johnson and appellees' attorney concerning the possibility of arbitration. Fourteen months after that correspondence, and eighteen months after filing answers in the lawsuit, on December 20, 2012, Hill wrote to appellees' attorney regarding appellants' intention to file a motion to compel arbitration, followed by the January 2, 2013 filing of the motion to compel arbitration. When the motion to compel arbitration was filed, the case had been pending for nineteen and one-half months and had been set for trial three times. *See Perry Homes*, 258 S.W.3d at 596 (waiver found when party delayed fourteen months after filing suit); *see also In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d 475, 479–80 (Tex. App.—Corpus Christi 2007, orig. proceeding) (finding waiver after fourteen months of litigation and resetting matter for trial three times).[9]

With regard to whether appellants waived a contractual right to arbitration by delay in seeking an order from the trial court compelling arbitration, we are mindful that delay alone generally does not establish waiver. *See In re Vesta Ins. Group*, 192 S.W.3d at 763. The quantum of litigation conduct that will be deemed "substantial" depends very much on the context. *See Perry Homes*, 258 S.W.3d at 593. We must consider appellants' delay in pursuing

---

[9] We note that rule 6.1(b)(2) of the Texas Rules of Judicial Administration indicates that statutory county court judges should, as far as reasonably possible, ensure that civil non-jury cases are brought to trial or final disposition within twelve months of an appearance date. TEX. R. JUD. ADMIN. 6.1(b)(2). Appellants' motion to compel arbitration was filed some six months after the date rule 6.1(b)(2) suggests a non-jury civil case be resolved.

arbitration of appellees' claims against them in the context of other factors affecting the litigation process. *See*, *e.g.*, *id*. at 590–91.

Discovery

The discovery conducted in the case by Ideal Inc. and Ideal L.L.P. and by appellees related to the merits of appellees' claims and liability for appellees' claims. Written discovery, consisting of a request for disclosure, interrogatories, and requests for production, was served by Ideal L.L.P. on appellees. The written discovery was not pertinent to arbitrability of appellees' claims or to jurisdiction. Further, the record indicates Ideal Inc. responded to the request for disclosures served on it by Ideal L.L.P. That written discovery was not pertinent to arbitrability or jurisdiction. Rather, the discovery was exchanged in connection with a dispute between Ideal Inc. and Ideal L.L.P. regarding liability for appellees' claims.

Appellees served requests for disclosure and requests for production on Ideal Inc. and Ideal L.L.P. Appellees filed two motions to compel production against Ideal Inc. and Ideal L.L.P. in an effort to obtain responses to appellees' written discovery. Ideal L.L.P. filed a privilege log with the trial court with regard to documents sought by appellees through written discovery.

The only depositions in the case were taken by Ideal Inc. and Ideal L.L.P.: the deposition of appellee Nery Armbruster and the deposition of appellees' expert witness.[10] Appellees took no depositions and their attorney stated at the hearing on appellants' motion to compel arbitration that they did not intend to take depositions. An inspection of the appellees' roof was conducted by Ideal Inc. and Ideal L.L.P.

---

[10] At the hearing on appellants' motion to compel arbitration, Hill indicated there was another deposition appellants desired to take.

Merits Activity

The record reflects merits activity conducted by Ideal Inc. and Ideal L.L.P. Ideal Inc. filed an affirmative defense to appellees' claims in which it asserted Ideal L.L.P. is the only potentially liable party. Ideal Inc. also filed a counterclaim against appellees for attorney's fees incurred in defense of the lawsuit. After Ideal Inc. and Ideal L.L.P resolved a dispute between them concerning liability for appellees' claims, they proposed appellees' claims be mediated, and the trial court entered an order for mediation. The parties attended two days of mediation. Hill assured the mediator and appellees of Ideal Inc.'s and Ideal L.L.P's willingness "to work to resolve this matter" in mediation. Ideal Inc. and Ideal L.L.P. forwarded a proposed docket control schedule to appellees for entry by the trial court in advance of the third trial setting of the lawsuit. Ideal L.L.P. filed a motion for summary judgment on the merits and twice set the motion for hearing, necessitating a response by appellees. As discussed above with regard to discovery conducted, Ideal Inc. and Ideal L.L.P. undertook inspection of the appellees' roof. Indeed, a year before the filing of the motion to compel arbitration, Rucker wrote to the attorney for appellees in January 2012, proposing appellees' expert meet with appellants' expert in an effort to "agree on what needs to be done to fix any construction defects."

Application of *Perry Homes* Waiver Standard

The supreme court in *Perry Homes* emphasized facts that would constitute waiver: "allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial." *Perry Homes*, 258 S.W.3d at 590 (quoting *In re Vesta Ins. Group*, 192 S.W.3d at 764)). Here, appellant Ideal L.L.P. filed a dispositive motion on the merits in the form of a motion for summary judgment and the motion was twice set for hearing, appellants propounded written discovery on the merits, performed inspection of appellees' roof, deposed appellee Nery Armbruster and appellees' expert witness, attended two days of mediation, and

–12–

sought arbitration after the case had been pending for nineteen and one-half months and only four months before the third trial setting.[11] On this record and considering the totality of the circumstances in this case, we conclude appellees met their burden of establishing appellants waived arbitration by substantially invoking the judicial process. *See StaxxRing, Inc.*, 344 S.W.3d at 650.

*Prejudice*

In addition to their burden of showing appellants substantially invoked the judicial process, appellees had the burden to show prejudice. *See Perry Homes*, 258 S.W.3d at 595 ("waiver of arbitration requires a showing of prejudice"). "Prejudice" in the context of waiver of a contractual right to arbitration "refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id*. at 597 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)). Prejudice is more easily shown when a party delays his request for arbitration and in the meantime engages in pretrial activity inconsistent with an intent to arbitrate. *Id*. at 600. In the context of waiver by litigation conduct, "the precise question is not so much when waiver occurs as when a party can no longer take it back." *Id*. at 595. Here, appellees presented sufficient evidence of prejudice resulting from appellants' failure to move to compel arbitration for eighteen months.

Appellees filed this lawsuit in Dallas, Texas, where they reside. The arbitration agreement provides arbitration is to be conducted in Houston, Texas. Appellees assert arbitrating in Houston will pose an economic hardship on them. Appellants effectively concede economic hardship in their supplemental responses to appellees' supplemental motion to compel

---

[11] At the hearing of appellants' motion to compel arbitration, the trial court noted the discovery and merits activity that had been undertaken in the case. The trial court noted the appellees' announcement they were ready for trial and that the case had been set for trial multiple times. Based on the totality of the circumstances, the trial court concluded appellees had substantially invoked the judicial process.

production filed January 25, 2012, in which they state it would be an economic burden for their attorney to travel to Dallas, Texas, from Houston, Texas, to attend a hearing.

Appellees presented evidence of the financial detriment to them as a result of appellants invoking the litigation process. Appellees' attorney represents them in this matter under a contingent fee agreement, with appellees responsible for payment of expenses, including the fees of their expert witness. Appellees introduced evidence of $3,500 expended in expert witness fees, including fees billed by the expert for attending his deposition taken by appellants. The arbitration agreement does not specify that discovery conducted in the lawsuit can be utilized in arbitration without the necessity for duplication of the written discovery and the depositions of appellees' expert and appellee Nery Armbruster.[12] *See StaxxRing, Inc.*, 344 S.W.3d at 652 (failure to prove discovery during litigation, and the attendant costs, would not have occurred in arbitration does not negate a conclusion of prejudice from failure to timely invoke an arbitration clause while simultaneously actively pursuing discovery under rules of civil procedure). Appellees argue they have been prejudiced by incurring expenses of two days of mediation, only to then have appellants move to compel arbitration with the attendant expenses arbitration entails. Further, appellees argued to the trial court at the hearing of appellants' motion to compel arbitration that they did not intend to take depositions in the matter, they would rely on the discovery that had been conducted, and they were ready to proceed to trial months before the hearing on the motion to compel arbitration.

On this record and considering the totality of the circumstances in this case, we conclude appellees have met their burden of establishing they were prejudiced by appellants' substantially invoking the judicial process. We resolve appellants' issue against them.

---

[12] The arbitration agreement provides that arbitration conducted pursuant to the agreement shall be conducted "to the extent not inconsistent" with the Commercial Arbitration Rules of the American Arbitration Association. However, no provision of the arbitration agreement describes what discovery is permitted under the agreement.

## Conclusion

The trial court did not abuse its discretion by denying appellants' motion to compel arbitration. We affirm the trial court's order denying appellants' motion to compel arbitration.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

130446F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IDEAL ROOFING, INC. AND IDEAL
ROOFING, L.L.P., Appellants

No. 05-13-00446-CV     V.

MIKE ARMBRUSTER AND NERY
ARMBRUSTER, Appellees

On Appeal from the County Court at Law
No. 5, Dallas County, Texas,
Trial Court Cause No. CC-11-03420-E.
Opinion delivered by Justice Fillmore,
Justices Bridges and Lewis participating.

In accordance with this Court's opinion of this date, the order of the trial court denying Ideal Roofing, Inc. and Ideal Roofing, L.L.P.'s motion to compel arbitration proceedings against them is **AFFIRMED**, and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellees Mike Armbruster and Nery Armbruster recover their costs of this appeal from appellants Ideal Roofing, Inc. and Ideal Roofing, L.L.P.

Judgment entered this 18th day of November, 2013.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

–16–