## In re CHAMPION TECHNOLOGIES, INC. and Permian Mud Service, Inc.

### No. 11–06–00181–CV.

Court of Appeals of Texas, Eastland.

Nov. 2, 2006.

James W. Essman, B. Calvin Hendrick, Shafer, Davis, O'Leary & Stoker, Odessa, for relator.

Richard D. Davis, James L. Killion, The Law Offices of Killion & Curtis L.L.P., Lubbock, for real parties in interest.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

This mandamus proceeding concerns the enforcement of an arbitration agreement. Relators, Champion Technologies, Inc. (Champion) and Permian Mud Service, Inc. (Permian), filed a motion to compel arbitration that the trial court denied. They seek an order from this court directing the trial court to refer the underlying proceedings to arbitration. Their petition for writ of mandamus is conditionally granted in part and denied in part.

1. Real parties in interest allege that Permian is the parent company of Champion. They seek to impose joint and several liability against Permian for Champion's acts.

*Background Facts*

Real parties in interest Burl Fuller, Danny Alexander, and Billy York are former employees of Champion. They filed a wrongful termination action against Champion and Permian on June 12, 2004.[1] Relators filed a motion to compel arbitration on October 14, 2004, alleging that the claims were subject to a written arbitration agreement. The relevant documents refer to the arbitration agreement at issue as the "Champion Technologies Dispute Resolution Program" (Program).

The trial court initially deferred ruling on the motion to compel arbitration until after the completion of discovery. Relators filed a previous mandamus proceeding in this court and a writ was conditionally granted directing the trial court to rule on the motion. *In re Champion Techs., Inc.,* 173 S.W.3d 595 (Tex.App.-Eastland 2005, orig. proceeding). This mandamus proceeding arises from the trial court's order entered in compliance with our previous directive.

The trial court detailed its basis for denying relators' motion to compel arbitration in a lengthy written order. The trial court concluded that the Program was unenforceable on the basis that it constituted an illusory contract. The trial court also determined that one of the claims asserted by York was not covered by the scope of the Program. Relators attack these determinations in two issues.

*Standard of Review*

Relators sought to compel arbitration under the provisions of the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§ 1–16.[2] A party seeking to compel arbi-

2. The arbitration agreement at issue provides that the provisions of the FAA are to govern its application.

tration under the FAA must establish that (1) there is a valid arbitration agreement and (2) the claims raised fall within that agreement's scope. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding). Mandamus relief is available when a trial court erroneously denies a motion to compel arbitration under the FAA. *Id.*

█ We review orders compelling or denying arbitration under the FAA under an abuse of discretion standard. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992) (orig. proceeding). A trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). When reviewing matters committed to a trial court's discretion, an appellate court may not substitute its own judgment for the trial court's judgment. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). Nor may a reviewing court set aside the trial court's determination unless it is clear from the record that the trial court could only reach one decision. *Id.* at 840. Our review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

### Illusory Contract

█ In their first issue, relators assert that the trial court abused its discretion by determining that the Program is illusory. The validity of an arbitration agreement is determined by contract law. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding). The trial court's determination of an arbitration agreement's validity is a question of law. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003).

█ An illusory promise of performance invalidates a bilateral contract. *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 645 (Tex.1994), *modified by Alex Sheshunoff Mgmt. Servs., v. Johnson*, 50 Tex. Sup.Ct. J. 44, 2006 WL 2997287 (Tex. Oct. 20, 2006).[3] A promise is illusory when it fails to bind the promisor who retains the option of discontinuing performance. *Id.* In the context of a standalone arbitration agreement, binding promises to arbitrate are required of both parties in order for the requirement of consideration to be met. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex.2005) (orig. proceeding). An arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex.2006) (orig. proceeding); *J.M. Davidson, Inc.*, 128 S.W.3d at 228–30; *In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex.2002) (orig. proceeding). Accordingly, the terms of the Program must be analyzed to determine if Champion has the unfettered right to avoid its promise to arbitrate. Prior to conducting this analysis, we note that Champion has not made any changes to the Program since its inception. To the contrary, Champion requests that this matter be arbitrated in accordance with the original terms of the Program.

---

**3.** Disagreeing with a statement it made in *Light,* the court in *Sheshunoff* held that a unilateral contract that is illusory when made can become enforceable under the Covenants Not to Compete Act, TEX. BUS. & COM.CODE ANN. §§ 15.50–.52 (Vernon 2002), when the employer performs a promise. For the reasons we will discuss, the agreement in this case was not illusory at the time it was made.

The trial court based its determination that the Program is illusory on the "Amendment" and "Termination" sections of the Program. These sections provide as follows:

## 6. AMENDMENT

This Program may be amended by [Champion] at any time by giving at least 30 days' notice to current Employees. However, no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules, unless otherwise agreed.

[Champion] may amend the Rules at any time by serving notice of the amendment on AAA. However, no amendment of the Rules shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules, unless otherwise agreed.

## 7. TERMINATION

This Program may be terminated by [Champion] at any time by giving at least 30 days' notice of termination to current Employees. However, termination shall not be effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination unless otherwise agreed.

The Amendment section consists of two provisions. The first provision governs Champion's right to amend the Program. The second provision of the Amendment section deals with Champion's authority to amend the "Rules." The "Rules" are a separate section of the Program that governs the process for conducting an arbitration under the Program. The Rules cover such areas as the method for initiating the arbitration, the appointment of the arbitrator, the date and location for the arbitration, the applicable discovery procedures, and the evidentiary rules for the arbitration.

The first provision of the Amendment section is similar to the single Termination provision. Accordingly, we will analyze the first provision of the Amendment section and the sole Termination provision together. These provisions are made up of two sentences. The first sentence provides that Champion can amend or terminate the Program by providing at least thirty days' notice to current employees. The second sentence prohibits Champion from amending or terminating the Program with respect to an arbitration proceeding that has been initiated prior to the date of amendment or termination. These two sentences contain language that is similar to the arbitration agreement reviewed by the supreme court in *Halliburton.*

The termination provision in *Halliburton* provided that "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." 80 S.W.3d at 569–70. The amendment provision in *Halliburton* provided that "no amendment shall apply to a Dispute of which the Sponsor had actual notice on the date of amendment." *Id.* The court concluded that these provisions were not illusory because Halliburton could not have avoided its promise to arbitrate by amending the provision or terminating it altogether. *Id.* The court expounded its holding in *Halliburton* in its subsequent opinion in *J.M. Davidson, Inc.,* 128 S.W.3d at 228–30. The court stated that it upheld the provisions in *Halliburton* because amendments to the arbitration agreement only applied prospectively to unknown claims and termination required notice and applied to both parties' rights. *Id.* at 228.

The real parties in interest contend that *Halliburton* is distinguishable. They base this contention on their status as former

employees and their construction of the first and second sentences of the provisions at issue. The second sentences provide that Champion cannot unilaterally amend or terminate the Program after an arbitration has been initiated under the Program. The real parties in interest contend that, as former employees, these sentences do not apply to them. They base this argument on the fact that the "first" sentences which precede these sentences only require Champion to notify current employees of an amendment or termination of the Program. We disagree with this interpretation. In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *See J.M. Davidson, Inc.,* 128 S.W.3d at 229. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.* The succeeding sentences are not dependent upon the preceding sentences for their meaning or effect. They contain terms which apply universally to both current and former employees:

> However, no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules, unless otherwise agreed.

> However, termination shall not be effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination unless otherwise agreed.

The second provision of the Amendment section pertaining to the amendment of the "Rules" also contains a similarly worded sentence that provides: "However, no amendment of the Rules shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules, unless otherwise agreed."

We conclude that Champion does not have the contractual right to amend or terminate the Program itself or the "Rules" after an arbitration is initiated under the Program with respect to a dispute involving former employees. This determination is significant to our analysis because it establishes that changes to the Program would only have a prospective effect. As the aggrieved parties, the real parties in interest were required by the terms of the Program to initiate arbitration in order to present their disputes for resolution. If they had done so, Champion could not have avoided its promise to arbitrate by either amending or terminating the Program itself or the "Rules." The Texas Supreme Court addressed an analogous situation in *AdvancePCS Health* wherein the court stated: "Had the pharmacies invoked arbitration rather than filing suit, PCS could not have avoided arbitration by terminating the Provider Agreement. Thus, the clause was not illusory." 172 S.W.3d at 607–08.

▪ Furthermore, the omission of former employees from the class of persons to be notified of changes does not render the Program illusory. The real parties in interest were current employees of Champion when the Program was instituted.[4] Accordingly, there was an initial thirty-day period during which Champion could not have amended or terminated the Program with respect to the real parties in interest. The existence of this initial thirty-day window of protection negates the illusory promise contention of the real parties in interest. *AdvancePCS Health,* 172 S.W.3d at 607 (citing the ten-day window of protection in *Halliburton*). Moreover, this initial thirty-day window continued to exist until thirty days following the date that Champion notified the real parties in inter-

---

**4.** The real parties in interest acknowledged receipt of the Program on May 21, 2003.

est of their termination from employment.[5] Any subsequent attempt by Champion to amend or terminate the Program without notifying the real parties in interest would be ineffectual to change the terms of the Program. *In re Dillard Dep't Stores, Inc.,* 198 S.W.3d 778, 782 (Tex.2006) (orig. proceeding) (citing *Halliburton* for the proposition that a change in employment terms does not affect employees who do not receive notice of the changes and accept them).

With respect to the notice element of the "Rules" amendment provision, the provision appears to provide that Champion can amend the Rules at any time without providing any class of employees with notice of the change. Relators assert that that provision is of no consequence because the Rules of the Program provide that the "Employment Dispute Resolution Rules" of the American Arbitration Association (AAA) apply to arbitrations initiated under the Program. Relators cite a provision of the current version of these rules which provides as follows: "If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules."[6] Accordingly, Champion cannot avoid its promise to arbitrate by amending the Rules because the rules of the AAA would nullify the offending amendments.

Finally, we must address an external provision cited by the real parties in interest in support of their illusory promise contention. Champion presented the Program to its employees in a three-part booklet that also contained Champion's "Code of Conduct" and "Workplace Rules." One of the provisions contained in the Workplace Rules provides that "Champion reserves the right to amend, alter and terminate policies and procedures at any time." The real parties in interest assert that this provision grants Champion the unfettered right to modify or terminate the terms of the Program. We disagree. A page entitled "Acknowledgement of Receipt and Agreement" accompanied the Program. Each of the real parties in interest acknowledged their receipt of the Program by signing this page. The acknowledgment page contains the following statement:

> I further recognize that Champion may amend, change, or terminate the Program *only* in accordance with Paragraphs 6 and 7 of the Program and that policies, provisions, or statements contained in any document other than the Program, which address Champion's right to amend, change, or terminate policies, procedures, or programs, shall not apply to the Program.

This provision expressly prohibits Champion from relying on a provision of the Workplace Rules to amend or terminate the Program.

---

**5.** The real parties in interest were notified of their termination by Champion in letters dated January 22, 2004.

**6.** The current version of the AAA's employment dispute resolution rules are entitled "Employment Arbitration Rules and Mediation Procedures." They became effective on July 1, 2006. The previous version of these rules contains the same provision. Relators attached a copy of these new rules to their reply to Fuller's response to the petition for writ of mandamus. Fuller has filed a motion to strike this attachment as a part of the record in this mandamus proceeding on the ground that these rules were not filed with the trial court. This motion is overruled. The Program incorporates the rules of the AAA as a part of its terms. The rules and procedures of the AAA are readily available via the internet. Relators' act of providing a copy of these rules to the court is similar to a party attaching a copy of a statute or regulation for the court's benefit.

We conclude that the trial court's interpretation of the Program's Amendment and Termination sections is erroneous because Champion could not have avoided its promise to arbitrate the claims asserted by the real parties in interest. Relators' first issue is sustained.

### York's Tortious Interference Claim

██ Relators' second issue addresses the trial court's determination that York's claim against them for tortious inference with a contractual relationship falls outside the scope of the Program. York became employed by United Energy after being terminated by Champion. He contends that Champion caused him to be terminated by United Energy by threatening a third party with whom both Champion and United Energy had storage space that Champion would cease using the third party's storage facility if York continued to work for United Energy.

Relators contend that the Program broadly defines the disputes that are covered by the Program and that York's tortious interference claim is included within the definition because it is a claim that arose subsequent to his receipt of the Program. Under Relators' interpretation of the Program, any claim that may subsequently arise between them and York would be subject to the Program. We agree that the Program's description of the subject disputes is comprehensive. However, the terms of the Program begin with the following statement under the heading of "Purpose and Construction":

> The Program is designed to provide a means for the quick, fair, accessible, and inexpensive resolution of Disputes between the Company and the Company's present and former Employees and Applicants for employment, *related to or arising out of a current, former or po-*

*tential employment relationship with the Company.* (emphasis added)

The connection between York's previous employment relationship with Relators and his claim that they later interfered with his subsequent employment relationship with a third party is tenuous and coincidental. We conclude that the trial court did not abuse its discretion in determining that the tortious interference claim falls outside of the scope of the Program. Relators' second issue is overruled.

### This Court's Ruling

Fuller's motion to strike materials filed by Relators is overruled. Relators' petition for writ of mandamus is denied with respect to York's claim for tortious interference with his subsequent employment relationship with United Energy. With respect to the remaining claims, we conditionally grant a writ of mandamus. The trial court is directed to vacate its "Order on Defendants' Motions to Compel" and to enter a new order compelling arbitration of the remaining claims. In the event that the order is not entered by December 4, 2006, writ of mandamus will issue.