Opinion filed November 13, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed November 13,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-08-00215-CV 

                                                     __________

 

                               IN
RE GOLDEN PEANUT COMPANY, LLC,

 



 

                                                Original
Mandamus Proceeding

 



 

                                                                   O
P I N I O N

  This is a mandamus proceeding complaining
of the trial court=s
order denying Golden Peanut Company, LLC=s
motion to abate and compel arbitration.  We deny the petition.

I.
Background Facts

            Golden
Peanut did not subscribe to workers=
compensation insurance.  It instead provided employees with an Employee Injury
Benefit Plan under the Employee Retirement Income Security Act.[1] 
That plan included medical and disability benefits for injured employees and a
death benefit in the case of job-related fatalities.  Golden Peanut also gave
its employees a document entitled Mutual Agreement to Arbitrate.  Grant Drennan
was an employee of Golden Peanut and acknowledged receiving Golden Peanut=s benefit plan and
arbitration agreement and agreed to comply with the arbitration agreement.








Drennan
was killed while in the course and scope of his employment.  Drennan=s estate applied for and received
plan benefits, but his widow Mindi Drennan elected to file suit against Golden
Peanut on behalf of herself, their children, and Drennan=s estate rather than claim the plan=s death benefit.  Drennan=s parents, Louie and Joyce
Drennan, were subsequently added as plaintiffs.  Golden Peanut filed a motion
to abate and compel arbitration.  Plaintiffs amended their petition and dropped
the estate as a party.  The trial court conducted a hearing and denied Golden
Peanut=s motion.

II.
Issues

 
Golden Peanut contends that the trial court abused its discretion by denying
the motion to abate and compel arbitration.  Plaintiffs respond that the
arbitration agreement is void under Texas law, that it is not supported by
consideration, and that it does not bind nonsignatories.  

                                                            III.
Standard of Review

Golden
Peanut contends, and plaintiffs do not dispute, that the arbitration agreement
is subject to the Federal Arbitration Act (FAA)[2]
and that an order denying a motion to compel arbitration is properly reviewable
by mandamus.[3]  Even though
federal law applies, we still utilize Texas procedural rules when reviewing a
petition for writ of mandamus.  In re Champion Technologies, Inc., 173
S.W.3d 595, 598 (Tex. App.CEastland
2005, orig. proceeding).  We review orders denying a motion to compel arbitration
under the FAA for an abuse of discretion.  Jack B. Anglin Co. v. Tipps,
842 S.W.2d 266, 271 (Tex. 1992) (orig. proceeding).  A trial court abuses its
discretion if it acts without reference to any guiding rules or principles or
acts in an arbitrary or unreasonable manner.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).  When reviewing
matters committed to a trial court=s
discretion, an appellate court may not substitute its own judgment for that of
the trial court.  Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992)
(orig. proceeding).  Nor may a reviewing court set aside the trial court=s determination unless it
is clear from the record that the trial court could only reach one decision.  Id.
at 840.  








The
trial court=s
interpretation of the arbitration agreement itself is a legal question subject
to de novo review.  See J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223,
227 (Tex. 2003). Arbitration agreements are interpreted under traditional
contract principles.  Id.  Our primary concern is to ascertain the true
intentions of the parties as expressed in the instrument.  R & P Enters.
v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980).  We
examine and consider the entire writing in an effort to harmonize and give
effect to all the provisions of the contract so that none will be rendered
meaningless.  Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154,
158 (Tex. 1951).  No single provision taken alone will be given controlling
effect.  All the provisions must be considered with reference to the whole
instrument.  Myers v. Gulf Coast Minerals Mgmt. Corp., 361 S.W.2d 193,
196 (Tex. 1962).  The contracts are construed from a utilitarian standpoint,
bearing in mind the particular business activity sought to be served.  Reilly
v. Rangers Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987).

                                                                     IV.
Analysis

A
party seeking to compel arbitration under the FAA must establish that there is
a valid arbitration clause and that the claims raised fall within its scope.  In
re FirstMerit Bank, N.A., 52 S.W.3d 749, 754 (Tex. 2001) (orig.
proceeding).  The first element includes gateway matters such as whether a
valid arbitration clause exists and whether an arbitration clause is binding on
a nonparty.  In re Weekley Homes, L.P., 180 S.W.3d 127, 130 (Tex. 2005)
(orig. proceeding).  Courts may not order parties to arbitrate unless they have
agreed to do so.  Belmont Constructors, Inc. v. Lyondell Petrochem. Co.,
896 S.W.2d 352, 356-57 (Tex. App.CHouston
[1st Dist.] 1995, no writ [appeal and orig. proceeding]).  Consequently,
despite a presumption favoring arbitration, a valid agreement to arbitrate
remains a threshold requirement.  See In re Kellogg Brown & Root, Inc,
166 S.W.3d 732, 737-38 (Tex. 2005) (orig. proceeding) (presumption favoring
arbitration arises only after party seeking to compel arbitration establishes
valid agreement to arbitrate because purpose of FAA is to make arbitration
agreements as enforceable as other contracts, not more so).[4]


A. 
Is the Arbitration Agreement Void?

Plaintiffs
argue initially that the arbitration agreement is void under Texas law because
it violates Tex. Lab. Code Ann. ' 406.033 (Vernon 2006). 
This statute provides in relevant part:








(a) In an action
against an employer who does not have workers=
compensation insurance coverage to recover damages for personal injuries or
death sustained by an employee in the course and scope of the employment, it is
not a defense that:

 

(1)
the employee was guilty of contributory negligence;

(2)
the employee assumed the risk of injury or death; or

(3)
the injury or death was caused by the negligence of a fellow employee.

 

(e) A cause of
action described in Subsection (a) may not be waived by an employee before the
employee=s injury or
death.  Any agreement by an employee to waive a cause of action or any right
described in Subsection (a) before the employee=s
injury or death is void and unenforceable.

 

Plaintiffs argue
that the arbitration agreement violates this provision and is void because it
contains a provision allowing parties Ato
allege any claim, obtain any remedy, and assert any legal or equitable defense
that the party could allege, obtain or assert in a Texas state or federal
court.@  As we
understand plaintiffs=
position, they contend that the agreement allows Golden Peanut to assert a
common law defense in arbitration that would be unavailable in court.  We
disagree.  The agreement does not broaden Golden Peanut=s rights in an arbitration but merely confirms
that both parties can assert the same claims and defenses in arbitration that
they could in court.

Plaintiffs
also complain that, because the arbitration agreement allows parties to use
Texas discovery devices and file dispositive motions, Golden Peanut will be
allowed to indiscriminately choose which provisions of Texas law will apply and
which will not.  First, we are not sure why the use of discovery devices and
dispositive motions during arbitration makes an arbitration agreement void. 
The FAA gives contracting parties broad authority to determine their own
dispute resolution process.  Second, the agreement does not allow Golden Peanut
to retroactively define the arbitration process.  The process is defined by the
contract, and it is up to the arbitrator to resolve any disputes over its
administration.








Finally,
we note that three of our sister courts have considered whether an arbitration
agreement violates Section 406.033(e), and each concluded that it did not.[5] 
We find their reasoning persuasive.  The El Paso court recognized that the FAA
represents a federal policy favoring arbitration B
notwithstanding any state substantive or procedural policies to the contrary B writing that, under the
Supremacy Clause,[6] the FAA Atakes precedence over state
attempts, legislative or judicial, to undercut the enforceability of
arbitration agreements.@ 
In re Border Steel, Inc., 229 S.W.3d 825, 831 (Tex. App.CEl Paso 2007, orig.
proceeding) (citing In re Turner Bros. Trucking Co., 8 S.W.3d 370, 374
(Tex. App.CTexarkana
1999, orig. proceeding [mand. denied])).  Plaintiffs= position is directly contrary to this
legislative intent.  Accordingly, we find that the arbitration agreement is not
void.

 
B. Is the Arbitration Agreement Supported by Consideration?

 Plaintiffs
next argue that the arbitration agreement fails for lack of consideration both
generally and then specifically as applied to Louie and Joyce Drennan.  The
latter argument is actually a restatement of plaintiffs= contention that the agreement cannot be
applied to nonsignatories and will, therefore, be addressed separately. 
Plaintiffs recognize that a mutual promise to waive the right to litigate can
constitute consideration for an arbitration agreement but argue that there was
no mutual promise here because Golden Peanut retained the right to unilaterally
terminate the agreement.  The arbitration agreement included the following
clause:

11.  Termination
of Agreement

 

Company
shall have the right to prospectively terminate this Agreement.  Termination is
not effective for Covered Claims which accrued or occurred prior to the date of
the termination.  Termination is also not effective until ten (10) days after
reasonable notice is given to Claimant.

 

Plaintiffs
contend that this provision means only Drennan waived his right to a jury trial
and, thus, that it was not a bilateral agreement.








Plaintiffs
direct our attention to an unpublished opinion from the El Paso court that
found an arbitration agreement was unenforceable for want of consideration.  See
In re Jobe Concrete Prods., Inc., No. 08-02-00175-CV, 2003 WL 21757512
(Tex. App.CEl Paso
July 31, 2003, orig. proceeding).  In that case, however, the employer=s right to amend was not
limited to prospective changes only.  In fact, the agreement provided that the AAdministrator has
discretionary and final authority to interpret and implement the provisions of
the Plan, including, but not limited to, correcting any defect, reconciling any
inconsistency and supplying any omission, and making any and all determinations
that may impact a claim.@ 
Id. at *4.  Because of this provision, the court found the agreement
unenforceable.  We agree with the El Paso court=s
analysis but do not agree that it applies to this agreement.  

This
court addressed a similar issue in a case involving three individuals who filed
a wrongful termination suit against their former employer and its parent
company.  See In re Champion Techs., Inc., 222 S.W.3d 127 (Tex. App.CEastland 2006, orig.
proceeding [mand. denied]). The defendants filed a motion to compel arbitration
contending that the asserted claims were subject to a written arbitration
agreement.  The former employees argued that the agreement was unenforceable
because the employer=s
promise to submit to arbitration was illusory since the employer retained the
unilateral right to amend the agreement.  We found the employer=s promise was supported by
consideration because the employer could not amend or terminate the agreement
after the initiation of an arbitration, there was a window of protection
against any change, and amendments could have only a prospective effect.  Id.
at 132. 

Golden
Peanut=s right to
terminate the arbitration agreement operated prospectively only.  It could not
terminate the agreement for any accrued claim and could not terminate an
employee=s rights
until providing at least ten days notice.  Neither of which has it apparently
attempted to do.  The arbitration agreement was, therefore, supported by
consideration.

C. 
Are Plaintiffs Subject to the Arbitration Agreement?

Golden
Peanut contends that the trial court erred because plaintiffs= claims are covered by and
therefore are subject to the arbitration agreement.  The agreement=s scope is broadly
defined.  The agreement provides that it covers all claims arising from:

Any
injury suffered by Claimant while in the Course and Scope of Claimant=s employment with Company,
including but not limited to, claims for negligence, gross negligence, and all
claims for personal injuries, physical impairment, disfigurement, pain and
suffering, mental anguish, wrongful death, survival actions, loss of consortium
and/or services, medical and hospital expenses, expenses of transportation for
medical treatment, expenses of drugs and medical appliances, emotional
distress, exemplary or punitive damages and any other loss, detriment or claim
of whatever kind and character.

 

 








AClaimant@ is defined as:

 

[A] person who is
employed by Company and has a Covered Claim.  The term also includes a Claimant=s spouse, children,
parents, estate, successors and assigns.

 

Drennan signed
an acknowledgment form when he received the benefit plan and the arbitration
agreement that specifically provided: A[C]laims
brought by my spouse, children, parents, estate, successors and assigns are
also subject to this [arbitration agreement].@

Plaintiffs
do not contend that their claims are outside the agreement=s scope but argue that the
agreement is not binding upon them because they did not sign it.  The FAA does
not specify whether state or federal law applies when determining if
nonsignatories are bound by an arbitration provision, and the U.S. Supreme
Court has not directly addressed this issue.  Kellogg Brown & Root,
166 S.W.3d at 738.  The Fifth Circuit has applied both state and federal law.  See,
e.g., Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267-68 (5th Cir.
2004) (applying federal law); Fleetwood Enters., Inc. v. Gaskamp, 280
F.3d 1069, 1074-77 (5th Cir. 2002) (applying state law).  The Texas Supreme
Court has held that it is not convinced that state law plays no part in this
determination, but it has recognized the importance of state and federal law
being as consistent as possible because state and federal courts have
concurrent jurisdiction to enforce the FAA.  Kellogg Brown & Root,
166 S.W.3d at 738.

Courts
have recognized six theories that may bind nonsignatories to arbitration
agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4)
alter ego, (5) equitable estoppel, and (6) third-party beneficiary.  Kellogg
Brown & Root, 166 S.W.3d at 739.  Golden Peanut argues that the
arbitration agreement binds plaintiffs because it specifically addresses
wrongful death actions, because of the doctrine of direct benefit estoppel, and
because plaintiffs=
claims are derivative.  Golden Peanut also argues that Mindi is bound as a
third-party beneficiary.

1.  Direct Benefit Estoppel. 








The
Texas Supreme Court has held that a nonparty may be compelled to arbitrate Aif it seeks, through the
claim, to derive a direct benefit from the contract containing the arbitration
provision.@  Kellogg
Brown & Root, 166 S.W.3d at 741.[7] 
This doctrine, however, does not apply if the claimed benefits are Ainsubstantial@ or Aindirect.@ 
Weekley Homes, 180 S.W.3d at 134.  Nor does it apply if the claim merely
Arelates@ to the contract.  Kellogg
Brown & Root, 166 S.W.3d at 741.  Whether a claim seeks a direct benefit
from a contract containing an arbitration clause turns on the substance of the
claim, not artful pleading.  Sw. Bell Tel. Co. v. DeLanney, 809 S.W.2d
493, 495 (Tex. 1991).  Claims must be brought on the contract if liability
arises solely from the contract or must be determined by reference to it.  Weekley
Homes, 180 S.W.3d at 132.  But nonsignatory claims that Acan stand independently of
the underlying contract@
should generally not be arbitrated.  Kellogg Brown & Root, 166
S.W.3d at 739-40. 

A
lawsuit seeking contractual benefits subjects the claimant to an arbitration
clause in the contract whether it signed the contract or not.  See
FirstMerit Bank, 52 S.W.3d at 755-56.  However, a party can also bind
itself to an arbitration provision through its conduct during the life of the
contract.  Weekley Homes, 180 S.W.3d at 132.  For example, using a trade
name pursuant to an agreement containing an arbitration clause or receiving
lower insurance rates and the ability to sail under the French flag because of
a contract containing an arbitration clause bound nonsignatories to the
arbitration provisions.[8]  

Golden
Peanut argues that plaintiffs received direct benefits under the plan but does
not specify what benefits they received.  The record contains references to a
claim for benefits by Drennan=s
estate, but the estate is no longer a party.  The mere fact that the estate may
ultimately distribute cash it receives from its claim to Drennan=s heirs does not convert
the estate=s claim to
a direct claim by any of them.








Golden
Peanut next argues that plaintiffs=
negligence claim must be determined by reference to Drennan=s at-will employment
relationship and that this relationship was governed by the benefit plan and
arbitration agreement.  We disagree because the benefit plan specifically
provides otherwise.  Paragraph 12.2 is entitled AEmployment
Noncontractual@ and
reads:

The
establishment of this Plan shall not enlarge or otherwise affect an Employee=s Aat will@
employment by an Employer, and an Employer may terminate the employment of any
Employee at any time and/or modify the Employee=s
working relationship as desired, at-will for any or no reason (with or without
cause), as freely and with the same effect as if this Plan had not been
established.

 

The benefit plan
provides benefits for employees, but it does not speak to Golden Peanut=s duty to provide a safe
workplace or otherwise govern the employment relationship.  We note that
plaintiffs are not asserting that Golden Peanut violated a contractual duty but
a common law duty and that they are not seeking contractual damages but are
seeking statutory wrongful death damages.

Golden
Peanut correctly notes that Drennan=s
family was protected by the benefit plan for two years prior to his death. 
This, however, only made them incidental beneficiaries of the agreement. 
Drennan himself was the intended beneficiary.  See Gaskamp, 280 F.3d at
1076  (children were incidental beneficiaries when they lived in home with
their parents who agreed to arbitration provision in connection with their
purchase of the home); see also Sw. Tex. Pathology Assocs. v. Roosth, 27
S.W.3d 204 (Tex. App.CSan
Antonio 2000, pet. dism=d
w.o.j.) (wife was not bound by arbitration provision in husband=s professional partnership
agreement because her suit against her husband and the partnership did not seek
to enforce the terms of the agreement but asserted tort claims).  Because
plaintiffs are not asserting a contractual claim, because by their individual
conduct they have not attempted to take advantage of the benefit plan, and
because their claims are independent of the benefit plan, the doctrine of
direct benefit estoppel is inapplicable.

2.  Derivative Claims.








Golden
Peanut contends that, because a wrongful death claim is entirely derivative of
the decedent=s right
to sue for his own injuries, plaintiffs are bound by Drennan=s agreement to arbitrate 
personal injury claims.  See Russell v. Ingersoll-Rand Co., 841 S.W.2d
343, 347 (Tex. 1992) (Athe
right of statutory beneficiaries to maintain a wrongful death action is
entirely derivative of the decedent=s
right to have sued for his own injuries immediately prior to his death,@ and the beneficiaries Astand in the legal shoes of
the decedent@).
Because a wrongful death claim is derivative, Texas courts have held that
defendants can assert any defense against a statutory beneficiary that they
could have asserted against the decedent.  See, e.g., id. (statute of
limitations); Winkler v. Kirkwood Atrium Office Park, 816 S.W.2d 111,
115 (Tex. App.CHouston
[14th Dist.] 1991, writ denied) (membership agreement release signed by member
releasing club from injuries suffered while participating in fitness center programs
released all claims against all individuals and entities, including wrongful
death claims filed by nonsignatory wife and children).[9] 
Golden Peanut argues that, because it could have raised the arbitration
agreement in response to a lawsuit filed by Drennan, it necessarily follows
that it can raise the agreement in response to plaintiffs= litigation.








Golden
Peanut cites no case in which a Texas court found that a claimant was bound by
an arbitration agreement because its claim was derivative, and we have found
none in our own research.  In Russell, 841 S.W.2d at 346-47, the Texas
Supreme Court considered the impact of a claim being characterized as
derivative.  The court reiterated that a wrongful death action can be
maintained only if the deceased could have maintained a suit for his own
injuries immediately prior to his death.  Id. at 347.  In support of
this holding, the court cited numerous cases where a defendant was entitled to
raise a defensive issue against the wrongful death claimant; however, the court
did not cite a single case in which the claimant=s
choice of forum was determined by its status as a derivative claimant.  Id.
at 347 n.7.  This suggests that there is a distinction between a defendant=s right to raise a defense
predicated upon a contract with the decedent B
such as a liability limitation provision B
and the defendant=s
right to impose an arbitration agreement with the decedent upon statutory
beneficiaries.              That distinction may be explained by the fact that,
even though wrongful death claims are derivative, their recovery is personal to
the beneficiary.  See Tex. Civ.
Prac. & Rem. Code Ann. ''
71.004(a), 71.010(b) (Vernon 2008).  Courts have repeatedly recognized that
wrongful death claimants have an individually owned statutory cause of action. 
For example, the Houston First court held that a widow=s wrongful death claim was personal to her
and, thus, not subject to an arbitration agreement between her husband and his
nursing home.  See In re Kepka, 178 S.W.3d 279, 293 (Tex. App.CHouston [1st Dist.] 2005,
orig. proceeding).  The court noted that, under basic contract principles,
parties to an arbitration agreement generally lack the authority to bind others
without privity of contract.  Id. at 296.  The widow signed the
agreement with the nursing home but did so on behalf of her husband.  Because
she lacked privity of contract, she was not subject to the arbitration
agreement.  Id.; see also Merrill Lynch, Pierce, Fenner, and Smith,
Inc. v. Longoria, 783 S.W.2d 229, 231 (Tex. App.CCorpus Christi 1989, no writ) (wife not
required to arbitrate claim for loss of consortium even though it was
derivative of wrongful termination claim of her husband who was subject to
arbitration under employment contract).  

Because
Drennan=s statutory
beneficiaries have an individual right of recovery, the mere fact that he
executed an arbitration agreement does not bind them to arbitration. The
agreement refers to a broad range of claims and claimants, but Drennan signed
it in his individual capacity.  Moreover, our record contains no evidence that
he was authorized to contract on behalf of his spouse or parents, and the fact
that he was a parent does not make his agreement automatically binding upon his
children.  See Gaskamp, 280 F.3d at 1076 (Texas law does not ordinarily
bind children to the contracts their parents sign).  The trial court did not
abuse its discretion by failing to find that plaintiffs were bound by the
arbitration agreement as derivative claimants.

3.  Third-Party Beneficiary.

Golden
Peanut argues that Mindi is a third-party beneficiary of the benefit plan and,
therefore, is subject to the arbitration agreement.  The general rule is that
parties contract for themselves unless it clearly appears that they intended to
confer a direct benefit on a third party.  MCI Telecomms. Corp. v. Tex.
Utils. Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999).  The benefit plan
provides a death benefit and designates a surviving spouse as the primary
beneficiary.  Mindi is, accordingly, a third-party beneficiary.  As such, she
is bound by the arbitration agreement.  In re Rangel, 45 S.W.3d 783, 787
(Tex. App.CWaco 2001,
orig. proceeding) (wife was third-party beneficiary of husband=s contract with
exterminator and was bound by the contract=s
arbitration provision); Nationwide of Bryan, Inc. v. Dyer, 969 S.W.2d
518, 520 (Tex. App.CAustin
1998, no pet.) (wife was bound by arbitration provision in mobile home purchase
agreement signed by husband because she was a third-party beneficiary of that
contract).








This
would ordinarily require that we order her claim be submitted to arbitration,
but the agreement provides inconsistent directives for this instance.  As we
noted earlier, the agreement has broad language that specifically covers a
wrongful death claim by a surviving spouse.  However, in Paragraph 5b(i), the
agreement also provides that it Adoes
not apply@ to
claims for benefits under the plan (emphasis added).

Mindi=s position is apparently
that we need not address this because she did not sign the agreement and is not
seeking contractual benefits.  Whether her suit seeks contractual benefits is
not dispositive.  Texas courts recognize a distinction between procedural
arbitrability and substantive arbitrability.  Substantive arbitrability
encompasses gateway issues such as whether a particular agreement binds the
parties to arbitrate.  In re R & R Pers. Specialists of Tyler, Inc.,
146 S.W.3d 699, 705 (Tex. App.CTyler
2004, orig. proceeding).  These questions are resolved by the trial court.  Id. 
Procedural arbitrability involves questions that Agrow
out of the dispute and bear on its final disposition.@  Howsam v. Dean Witter Reynolds, Inc.,
537 U.S. 79, 84 (2002).  If the arbitration agreement requires that Mindi=s claim be arbitrated, it
is for the arbitrator to determine whether her recovery is limited to the
benefit plan.  See id. at 85-86.[10]

No
party has raised the issue of ambiguity; however, a court may conclude that a
document is ambiguous on its own motion.  See Grimes v. Andrews, 997
S.W.2d 877, 881 (Tex. App.CWaco
1999, no pet.) (court may conclude that a contract is ambiguous even when the parties
do not plead ambiguity).  While we can look at the benefit plan and the
arbitration agreement and make suppositions about the intent to include a
wrongful death claim by a surviving spouse, we are not authorized to find facts
but only to unfind them.  See Pool v. Ford Motor Co., 715 S.W.2d 629,
634 (Tex. 1986).  Because we cannot make a factual determination about the
parties= intent, we
cannot say that the trial court abused its discretion when it held that Mindi
was not bound by the arbitration agreement.  This holding is without prejudice
to the parties= right
to pursue the arbitration agreement=s
application to Mindi as a third-party beneficiary further in the trial court. 

V. Holding

The
petition is denied.

 

November 13, 2008                                                                 RICK
STRANGE

Panel consists of:  Wright, C.J.,                                              
  JUSTICE

McCall, J., and Strange, J.









[1]29 U.S.C. ''
1001-1461.





[2]See 9 U.S.C. '' 1-16.





[3]See In re Palacios, 221 S.W.3d 564, 565 (Tex. 2006) (orders denying arbitration under the
FAA are reviewable by mandamus).





[4]See also Cal. Fina Group, Inc. v. Herrin, 379 F.3d 311, 316 n.6 (5th Cir. 2004) (the policy in
favor of arbitration agreements does not apply when determining the threshold
question of whether an arbitration agreement exists).





[5]See In re Bison Bldg. Materials, Ltd., Nos. 01-07-00003-CV & 01-07-00029-CV, 2008 WL
2548568, at *9-10 (Tex. App.CHouston [1st
Dist.] June 26, 2008, orig. proceeding); In re Border Steel, Inc., 229
S.W.3d 825, 832 (Tex. App.CEl Paso 2007, orig. proceeding); In re R & R
Pers. Specialists of Tyler, Inc., 146 S.W.3d 699, 704 (Tex. App.CTyler 2004, orig. proceeding).





[6]U.S. Const. art. VI, cl. 2.





[7]The arbitration agreement and the benefit plan are
separate agreements, but the Receipt and Arbitration Acknowledgment Drennan
executed indicates that they were presented to him at the same time and as part
of the same transaction.  We are, therefore, construing them together.  See
Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby, 183 S.W.3d 891, 901
(Tex. App.CAustin 2006, orig. proceeding) (documents executed at
the same time, by the same parties, for the same purposes, and as part of the
same transaction were construed together).





[8]See Am. Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999) (nonsignatories
received lower insurance rates and the ability to sail under the French flag
pursuant to contract); Deloitte Noraudit A/S v. Deloitte Haskins &
Sells, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993) (firm used trade name
pursuant to contract).





[9]See also Maderazo v. Archem Co., 788 S.W.2d 395, 397 (Tex. App.CHouston [14th Dist.] 1990, no writ) (action against
decedent=s employer barred by Workers= Compensation Act); Kelley v. City of Austin,
268 S.W.2d 773, 775 (Tex. Civ. App.CAustin
1954, no writ) (action barred by governmental immunity); Childs v. Childs,
107 S.W.2d 703, 704 (Tex. Civ. App.CBeaumont
1937, no writ) (action barred by interspousal immunity); Sullivan-Sanford
Lumber Co. v. Watson, 155 S.W. 179, 180 (Tex. 1913) (the pass issued to the
decedent limited liability of private logging railroad for injuries or death
and was binding on wrongful death beneficiaries).





[10]That conclusion in this case is bolstered by the
arbitration agreement=s language, which provides: AThe question of whether any particular claim is a
Covered Claim under the terms of this Agreement shall be arbitrated pursuant to
the procedures set forth in this Agreement.@