*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



## OPINION

No. 04-11-00910-CV

**NABORS DRILLING USA, LP**,
Appellant

v.

Eder **PENA**, Individually, Maria Enriqueta Pena, Individually, and as Next Friend of
Esmeralda and Edna Pena, Minors,
Appellees

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 7,573
Honorable Jose A. Lopez, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  August 29, 2012

REVERSED AND REMANDED

Nabors Drilling USA, LP appeals the trial court's order denying its motion to compel arbitration. Because we hold that a valid agreement to arbitrate exists that covers the claims at issue in this suit, we reverse the trial court's order and remand for entry of an order compelling arbitration and staying all other proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

While working for Nabors Drilling USA, LP, Jesus Pena suffered a fatal heart attack. The Pena family[1] filed a wrongful death and survival action against Nabors. Nabors sought to compel arbitration pursuant to its Dispute Resolution Program for its employees. The Pena family opposed arbitration. The trial court ultimately denied Nabors' motion to compel arbitration and this accelerated appeal followed.

## STANDARD OF REVIEW

A party seeking to compel arbitration must establish the existence of a valid arbitration agreement, and show that the claims asserted fall within the scope of the arbitration agreement. *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding). Whether there is an enforceable agreement to arbitrate is a question of law which we review de novo. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Once the trial court finds a valid arbitration agreement, the burden then shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Id.* If the party seeking to compel arbitration establishes its right to arbitration and the opposing party does not defeat that right, the trial court has no discretion but to compel arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753-54 (Tex. 2001) (orig. proceeding). Because a presumption exists in favor of arbitration, courts must resolve any doubt about an arbitration agreement's existence or scope in favor of arbitration. *Id.* at 753.

The parties concede that Nabors' Dispute Resolution Program is governed by the Federal Arbitration Act ("FAA") and we concur. When determining the validity of an arbitration agreement that is subject to the FAA, we apply state law principles that govern the formation of

---

[1] Eder Pena, Individually, Maria Enriqueta Pena, Individually, and as Next Friend of Esmeralda and Edna Pena, Minors, filed suit against Nabors on September 17, 2010.

contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006); *J.M. Davidson*, 128 S.W.3d at 227-28.

### ANALYSIS

Nabors asserts that it has established the existence of a valid arbitration agreement and that the Pena family's claims fall within the scope of that agreement. Therefore, Nabors contends that the trial court abused its discretion by declining to order the parties to arbitration. In response, the Pena family does not dispute the existence of an arbitration agreement—the parties agree that Nabors' Dispute Resolution Program contains an arbitration agreement. They disagree only about whether the agreement to arbitrate fails for lack of consideration and is thus unenforceable as a matter of law. Specifically, the Pena family argues the Dispute Resolution Program does not contain a valid *Halliburton*[2] "savings clause" and therefore impermissibly allows Nabors the right to unilaterally amend or terminate the agreement to arbitrate. The Pena family specifically directs us to the following amendment and termination provisions within Nabors' Dispute Resolution Program:

> 6. Amendment:
>
> A. This Program may be amended by Sponsor at any time by giving at least 10 days' notice to current Employees. However, no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules, unless otherwise agreed.
>
> B. Sponsor may amend the Rules at any time by serving notice of the amendments . . . However, no amendments of the Rules shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules unless otherwise agreed.
>
> 7. Termination:
>
> This Program may be terminated by Sponsor at any time by giving at least 10 days' notice of termination to current Employees. However, termination shall not

---

[2] *In re Halliburton Co.*, 80 S.W.3d 566, 569-70 (Tex. 2002) (orig. proceeding).

be effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination unless otherwise agreed.

Based on the above-quoted provisions, the Pena family contends that Nabors' promise to arbitrate is illusory, and therefore the arbitration agreement within the Dispute Resolution Program is unenforceable. Thus, the trial court's order declining to compel arbitration should be affirmed.

### Mutual Promises to Arbitrate

Like other contracts, arbitration agreements must be supported by valid consideration. *Palm Harbor Homes*, 195 S.W.3d at 676. Consideration may take the form of mutual promises to submit a dispute to arbitration. *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010). "In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract." *Id.* at 567 (quoting *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (per curiam)). A promise that does not bind the promisor because the promisor retains the option of discontinuing performance is illusory. *24R*, 324 S.W.3d at 567; *J.M. Davidson*, 128 S.W.3d at 230 n.2 ("We note that most courts that have considered this issue have held that, if a party retains the unilateral, *unrestricted* right to terminate the arbitration agreement, it is illusory.") (emphasis added). When a purported bilateral contract is supported by nothing more than illusory promises, there is no mutuality of obligation, and therefore, no contract. *24R*, 324 S.W.3d at 567. We construe a contract in favor of mutuality. *Tex. Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970).

### Halliburton and its Progeny

The Texas Supreme Court first addressed and rejected the argument that an arbitration agreement was illusory in *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (orig. proceeding). An at-will employee of Halliburton argued that because the company retained the

right to modify or discontinue its dispute resolution program, the company's promise to arbitrate was illusory and therefore unenforceable. *See id.* The Supreme Court disagreed, noting that Halliburton's actions were limited by two express provisions within the dispute resolution program. *Id.* at 569-70. The first provision stated that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment." *Id.* The second provision stated that any termination of the arbitration program "shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." *Id.* at 570. Therefore, based on the terms of the arbitration agreement, Halliburton had to give its employees notice of any change to the program and any amendments would only apply prospectively. *See id.* at 569-70. Because Halliburton could not avoid its promise to arbitrate by amending or terminating the dispute resolution program, the Supreme Court held the arbitration agreement was not illusory. *Id.* at 570; *J.M. Davidson*, 128 S.W.3d at 230 ("In *Halliburton*, we rejected the argument that the arbitration agreement at issue was illusory because, among other things, it required ten days notice of any modification or termination and stated that any such amendment would apply prospectively only.").

In 2005, the Supreme Court again considered whether an arbitration provision was illusory in a dispute between a pharmacy benefits management company and its member pharmacies. *AdvancePCS Health*, 172 S.W.3d at 605. The pharmacies argued that the provider agreement allowed PCS to cancel the arbitration agreement at will, thus rendering its promise illusory and the agreement without consideration. *See id.* at 607. The Supreme Court disagreed, in part because an express provision within the agreement provided that "any obligations that arise prior to the termination of the Agreement shall survive such termination." *Id.* Based on

that savings clause, the Supreme Court reasoned that PCS could not have unilaterally terminated the agreement and thus avoided its obligation to arbitrate. *Id.* at 607-08.

In 2009 and 2010, the Supreme Court again rejected the argument that an arbitration clause was illusory because the agreement contained a limiting notice and savings provision that prevented any change from having a retroactive effect. *See In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009) (orig. proceeding) (dispute resolution plan had termination provision requiring notice to employees and any termination or modification applied prospectively only); *see also In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010) (orig. proceeding) (agreement provided that "no such amendment or termination [by Odyssey] will alter the arbitration provisions incorporated into this booklet with respect to, or reduce the amount of any benefit payable to . . . you under the Plan in connection with, an Injury occurring prior to the date of such amendment or termination," and that "any such amendment or termination of the arbitration provisions incorporated into this booklet shall not be effective until at least 14 days after written notice has been provided to you"). Since *Halliburton*, the Supreme Court has consistently held that when an arbitration agreement contains a savings clause that makes any amendment or termination operate prospectively only, it is not an illusory agreement.

### *Nabors' Dispute Resolution Program*

The Pena family contends that Nabors' Dispute Resolution Program lacks mutuality because it does not contain a proper *Halliburton* savings clause. Specifically, they argue that in order not to be illusory, any arbitration agreement containing a modification or termination provision must expressly state that a change in the agreement will not apply to a claim that has arisen or is known to the employer. Here, the savings clause found in Nabors' Dispute Resolution Program is limited to disputes where arbitration has been initiated. Therefore, the

Pena family contends that Nabors can amend or terminate the agreement as to claims that have accrued, or of which Nabors has knowledge, as long as it acts prior to the initiation of arbitration; therefore, its agreement to arbitrate is illusory and unenforceable.

The following illustrates the difference in the wording between the *Halliburton* savings provision and the savings provision at issue here:

| Halliburton | Nabors |
|---|---|
| "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment" | "no amendment shall apply to a Dispute for which a proceeding has been initiated pursuant to the Rules, unless otherwise agreed" |
| "termination shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination" | "termination shall not be effective as to Disputes for which a proceeding has been initiated pursuant to the Rules prior to the date of termination unless otherwise agreed" |

*See Halliburton*, 80 S.W.3d at 569-70.

The Pena family notes that Nabors had notice of its wrongful death claim on October 13, 2010, and an arbitration proceeding was not initiated until approximately one year later, on October 14, 2011[3]. Therefore, they maintain that under the facts of this lawsuit, and under the contract terms of Nabors' Dispute Resolution Program, Nabors had the unilateral right during that time period to amend or terminate the Dispute Resolution Program. Thus, because Nabors could have avoided its promise to arbitrate by amending or terminating the Dispute Resolution

---

[3] Nabors contends it initiated arbitration on October 14, 2010 when it sent a demand letter to the Pena family and requested they submit their claims to final and binding arbitration pursuant to the Dispute Resolution Program.

Program, the Pena family concludes Nabors' promise to arbitrate is illusory and therefore unenforceable.  *See id.*

At least four courts of appeals decisions, including one from this court, have rejected arguments that the same, or substantially similar, arbitration agreements are illusory and have upheld the arbitration agreements as enforceable.  In *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 248-49 (Tex. App.—San Antonio 2006, orig. proceeding), we held that Nabors Drilling USA's same agreement to arbitrate contained within its Dispute Resolution Program was not illusory and did not suffer from a failure of consideration.   Comparing Nabors' arbitration agreement to the agreement in *Halliburton*, we reasoned that, "Like the employer in *In re Halliburton*, Nabors's right to amend or terminate the [Dispute] Resolution Program is qualified: any such amendment or termination of the arbitration agreement is subject to ten days notice to the employee and is inapplicable to arbitration proceedings that have already been initiated . . . As such, the promise to arbitrate is not illusory, and the agreement to arbitrate is enforceable." *Id.* at 248-49 (citing *Halliburton*, 80 S.W.3d at 570).  Our sister courts of appeals have similarly upheld arbitration agreements containing the same or substantially the same savings provisions. *See Nabors Wells Services, Ltd. v. Herrera*, No. 13-08-00397-CV, 2009 WL 200987, at *4-5 (Tex. App.—Corpus Christi Jan. 27, 2009, orig. proceeding) (mem. op.) (reaching the same result based on the same arbitration provision as in the instant case); *see also In re Champion Technologies, Inc.*, 222 S.W.3d 127, 131-32 (Tex. App.—Eastland 2006, orig. proceeding) (reaching the same result based on substantially the same language); *In re Kellogg Brown & Root*, 80 S.W.3d 611, 616 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (reaching the same result based on substantially the same language).

*In re Champion Technologies* dealt with an argument similar to that being made by the Pena family—that *Halliburton* is distinguishable because the savings clause in *Halliburton* applied to all claims that were known or had arisen, instead of only those claims for which arbitration had been initiated. *Champion Technologies*, 222 S.W.3d at 131-32. In rejecting the idea that *Halliburton* was distinguishable, the court noted that Champion's dispute resolution program's amendment and termination provisions required 30 days' notice and stated that no amendment or termination would be effective as to disputes for which an arbitration proceeding had been previously initiated; the court concluded that such language was similar to that used in *Halliburton*, and held that Champion's agreement to arbitrate was not illusory. *Id.* The Eastland court noted that the critical factor in its analysis of whether the arbitration agreement was illusory was that, as in *Halliburton*, any changes by Champion to the dispute resolution program would only have a prospective effect. *Id.* at 132. The court further relied on the fact that an injured employee was required to initiate arbitration under Champion's dispute resolution program, and once proceedings were initiated, Champion could not avoid arbitration, stating,

> As the aggrieved parties, the real parties in interest were required by the terms of the Program to initiate arbitration in order to present their disputes for resolution. If they had done so, Champion could not have avoided its promise to arbitrate by either amending or terminating the Program itself or the 'Rules.' The Texas Supreme Court addressed an analogous situation in *AdvancePCS Health* wherein the court stated: 'Had the pharmacies invoked arbitration rather than filing suit, PCS could not have avoided arbitration by terminating the Provider Agreement. Thus, the clause was not illusory.' 172 S.W.3d at 607–08.

*Id.*

The Pena family relies heavily on a California appellate court case, *Peleg v. Neiman Marcus Group, Inc.*, 140 Cal.Rptr.3d 38, 63-64 (Cal. App. 2d 2012), which declined to follow *Carpenter*, *Kellogg*, and *Champion*, stating they are inconsistent with *Halliburton* and its progeny. In addressing whether an employment arbitration agreement was illusory, the

California court reviewed and applied Texas law under a choice-of-law provision; the court ultimately held that a unilateral modification provision which required only 30 days' notice to employees and expressly applied to any claim not yet filed with the American Arbitration Association, including accrued and known claims, rendered the arbitration agreement illusory under Texas law. *Id.* at 42. In reaching its decision, the California court stated that all claims that have accrued, or of which the employer has knowledge, must be protected from any contract changes in order for a stand-alone arbitration agreement to be upheld as not illusory under Texas law. *Id.* at 61-62. Based on its reading of Texas law, the *Peleg* court criticized *Carpenter*, *Kellogg*, and *Champion* as misapplying *Halliburton* because "[t]here [were] no *Halliburton* type savings clauses which preclude[d] application of . . . amendments to disputes which arose (or of which [the employer] had notice) before the amendment." *Id.* at 64. *Peleg* is not controlling, and we respectfully disagree with its analysis of Texas law.

## CONCLUSION

In conclusion, although the notice and savings provisions within Nabors' Dispute Resolution Program do not mirror the provisions in *Halliburton*, we nonetheless hold that Nabors' arbitration agreement within its Dispute Resolution Program is not illusory, but is a valid and enforceable agreement to arbitrate. Nabors' right to amend or terminate the Dispute Resolution Program is limited by requirements that Nabors provide at least ten days' notice to employees and that Nabors exempt from change any disputes for which arbitration proceedings have been initiated. Therefore, Nabors does not have a unilateral right to avoid its agreement to arbitrate which would negate consideration and render the agreement illusory. Because a valid arbitration agreement exists that covers the claims alleged by the Pena family, and no defenses to enforcement have been established, we conclude the trial court had no discretion but to compel

arbitration. *FirstMerit Bank*, 52 S.W.3d at 753-54; *Carpenter*, 198 S.W.3d at 249. Accordingly, we reverse the trial court's order denying Nabors' motion to compel arbitration and remand this cause with instructions to the trial court to enter an order compelling arbitration between the parties and staying all other proceedings pending the outcome of arbitration.

Phylis J. Speedlin, Justice